## UNITED STATES DISTRICT COURT

## DISTRICT OF COLUMBIA

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,** | |
| **Plaintiff,** | |
| **v.** | **Civ. No.: 1:08-mc-00526 (ESH/JMF)** |
| **COMPUCREDIT CORPORATION,** *et al.***,** | |
| **Defendants.** | |

### THIRD-PARTY FEDERAL DEPOSIT INSURANCE CORPORATION'S MEMORANDUM OF LAW IN OPPOSITION TO COMPUCREDIT'S MOTION TO COMPEL ENFORCEMENT OF ITS SUBPOENA DUCES TECUM

Third-party Federal Deposit Insurance Corporation (FDIC), by and through its undersigned counsel, submits this memorandum of law in opposition to CompuCredit Corporation's (CompuCredit) Motion to Compel Production of Documents (Motion).

### Preliminary Statement

CompuCredit's Motion is premature and unwarranted. Indeed, in light of the FDIC's cooperation and actual document production, for CompuCredit to press this Motion under the current circumstances borders on frivolous.

As an initial matter, CompuCredit never informed the FDIC that it intended to file this Motion, as is required pursuant to Local Rule 7(m). Rather, after receiving the FDIC's specific objections and responses to its demands that CompuCredit explicitly requested, CompuCredit disregarded the FDIC's proffer to make itself available "*at any time*" for a conference to discuss the production and, instead, filed this Motion. *See* Ex. M (emphasis in original).

Not only has CompuCredit failed to frame the issues through the meet-and-confer process, it fails to state in its memorandum any particular grounds for its Motion. CompuCredit

instead makes broad and inaccurate generalizations that do not afford the FDIC adequate detail as to CompuCredit's concerns or an adequate opportunity to respond.

Moreover, at the time it filed its Motion demanding this Court to order the FDIC to commence document production, CompuCredit knew full well that the ***only*** impediments to production were first, a lack of a protective order in this case until August 6, 2008 and, second, CompuCredit's refusal to include a provision in the protective order stipulated to by CompuCredit and the FTC that was included in the separate protective orders that CompuCredit stipulated to the related administrative matters with the FDIC.[1]  Last Friday, when CompuCredit finally agreed to and executed the eminently reasonable stipulation making the federal protective order consistent with the administrative protective order, ***within hours*** the FDIC commenced its document production.

Now that document production has commenced, CompuCredit has refused to articulate any basis – let alone a good faith basis – for maintaining this Motion.  The FDIC has worked diligently to coordinate its production in this action, and in the three related administrative actions involving CompuCredit and banks with which it is affiliated.  As demonstrated by the FDIC's responses in this action and those other matters, the FDIC intends to and is producing the very non-privileged, non-objectionable documents sought by this Motion.  CompuCredit's effort to fabricate a discovery dispute where none lies should be rejected, as should its Motion, and CompuCredit should be ordered to engage in a good faith meet-and-confer process to resolve and frame for resolution any legitimate issues that may arise.

---

[1] The FDIC has administrative actions pending against CompuCredit and two banks that issued CompuCredit credit cards.

## Background

The FTC brought this unfair and deceptive business practices action against CompuCredit under Section 5 of the Federal Trade Commission Act, 15 U.S.C. §45(a) (Section 5). As the FTC alleged, CompuCredit used false and misleading solicitations to entice subprime consumers (*e.g.*, individuals with poor credit histories) to enroll in predatory credit card programs that imposed high fees but extended little or no credit. By targeting particularly vulnerable and often unsophisticated borrowers, CompuCredit created a vortex – completely dependent upon its deceptive solicitations and business practices – by which its customers were pulled deeper and deeper into credit card debt. CompuCredit had contractual relationships with at least three federally-insured banks through which these products were offered.

The FDIC is not a party to the instant action. Nevertheless, CompuCredit served a barrage of discovery demands on the FDIC, including three individual deposition subpoenas, a 30(b)(6) deposition notice, and the document subpoena at issue, which seeks voluminous documents covering 33 categories and spanning a seven year period. *See* Ex. A, Document Subpoena.

CompuCredit fails to disclose in its memorandum that the FDIC already agreed and began to produce certain documents sought by its voluminous demands and instant Motion. In the related administrative actions brought by the FDIC against CompuCredit, CompuCredit served document demands that mirror in many respects those served in this matter, seeking 58 categories of documents and covering the same seven years. *See* Ex. B, Administrative Document Demands. Given the breadth and overlap of the demands, CompuCredit and the FDIC agreed that the documents disclosed in the administrative action may be used in this action, but explicitly stated that making the production in that action should not be "construed to

affect in any way the admissibility of any document . . . at *hearing*."  (Ex. C, Administrative Protective Order, ¶¶ 11, 23.)  With the shelter of the protective order, the FDIC has expressly agreed to produce and is producing documents responsive to both the administrative demands and the document subpoena at issue here.

CompuCredit alternately disregards and dramatically misstates its discussions with the FDIC in an effort to conceal that the *only* impediments to production of documents have been: (1) CompuCredit's dogged insistence that documents be turned over without an appropriate protective order in place; and (2) CompuCredit's refusal to agree to extend to the FDIC the protections afforded to the parties under the stipulated protective order in this action that was, in fact, identical to the provision that CompuCredit stipulated to in the administrative actions.

The FDIC was willing to produce documents with the appropriate protections.  Given the FDIC's duty to protect the confidentiality of the information obtained as a result of its regulatory responsibilities, the FDIC could not turn over any confidential information without a protective order.  As early as July 21 and 22, 2008, Marguerite Sagatelian, enforcement counsel for the FDIC, engaged in a meet-and-confer session with CompuCredit's counsel regarding CompuCredit's document subpoena.  *See* Ex. D, July 23, 2008 letter from Marguerite Sagatelian to Michael F. Williams.  During those conversations, the FDIC agreed to produce documents responsive to CompuCredit requests subject to the implementation of "an appropriate protective order."  *Id.*

The following day, counsel for CompuCredit responded by letter and asked for written objections to the subpoena.  *See* Ex. E, July 24, 2008 letter from Michael F. Williams to Marguerite Sagatelian.  FDIC's enforcement counsel promptly responded, agreeing to provide specific written objections and reiterating that production would commence "[o]nce the

protective order is in place." Ex. F, July 25, 2008 letter from Heather Walters to Michael F. Williams. The parties exchanged further correspondence, with the FDIC's enforcement counsel noting, again, that as of July 31, 2008, "no protective order had been issued in" the FTC case. (Ex. G, July 31, 2008 letter from Heather Walters to Michael F. Williams.)

The FDIC's insistence on an appropriate protective order was not merely formulaic. The FDIC has a duty to protect the confidential information of its regulated banks. In addition, a necessary corollary to the parties' agreement to allow documents produced in one action was that they be available for use in another action, subject to the evidentiary rules of each forum. All parties to the related actions were concerned that the disclosure of documents in one forum not be used as a concession as to the relevance or admissibility of the documents in any forum. As noted, CompuCredit and the FDIC agreed to a protective order in the administrative action designed to preclude the parties from construing the production of documents as a concession of admissibility in the administrative *hearing*. *See* Ex. C, Administrative Protective Order, *supra*. The FTC and CompuCredit similarly stipulated to a protective order in this action that allowed documents produced in this matter to be used in the related administrative actions, but also provided that such production should not be deemed a concession as to "the admissibility of any document, testimony, or other evidence at *trial*." Ex. H, Protective Order ¶ 13 (emphasis added). The FDIC was concerned that this protective order did not preclude CompuCredit from construing the FDIC's production of documents in this matter as a concession of the admissibility of the documents at the administrative *hearing*. The FDIC had reason to be concerned: CompuCredit refused to agree that it would not do so.

The FDIC repeatedly expressed its concerns, advising CompuCredit that the stipulated protective order entered in this action:

> . . . does not address whether and to what extent documentation and
> information produced in this matter may be used in the administrative
> actions pending between the parties.  We propose amending or
> supplementing the order to explicitly state that production in this matter
> shall not be construed to affect in any way the admissibility of the
> discovery during the administrative proceedings.

Ex. I, Letter from Karla Sanchez to Michael F. Williams, dated August 7, 2008; s*ee also* Ex. J,

E-mail dated August 13, 2008 from Erik Haas to Rebecca Anzidei.  Although the FDIC

reiterated time and time again that the production could commence upon the execution of the

proposed amendment to the protective order, CompuCredit refused to agree to the modification,

without once articulating why it was opposed to stipulating that it would not attribute an

improper inference to the FDIC's production in this matter.  *See* Ex. K, Email from Daniel T.

Donovan to Karla Sanchez, dated August 20, 2008.  Additionally, CompuCredit never indicated

why this provision, stipulated to with the FDIC in the administrative action, was suddenly

objectionable in the federal protective order.

Despite CompuCredit's recalcitrance, the FDIC moved forward with discovery,

providing the particularized objections and responses to the document subpoena that

CompuCredit requested.  *See* Ex. L, Document Responses and Objections.  The FDIC's

responses identify the documents it agreed to produce, which include many of the very

documents CompuCredit represents to this Court that FDIC has refused to produce.  *See* Motion,

pp. 5 & 9.  After serving the responses, FDIC's counsel repeatedly expressed its willingness to

meet and confer regarding the responses, offering to make themselves available at "***any time***"

convenient for CompuCredit.  *See* Ex. J, E-mails from Erik Haas to Rebecca Anzidei, dated

August 13, 2008 (emphasis in original).  Indeed, in anticipation of production, FDIC's counsel

emailed CompuCredit detailed technical standards for the parties' production of electronic

discovery on August 14, 2008.  *See* Ex. M., E-mail from Erik Haas to Rebecca Anzidei, dated

August 14, 2008.  Rather than meet and confer, or execute the proposed stipulation to amend the protective order to allow production to commence, CompuCredit filed this instant Motion to Compel the next day, on August 15 (nine days following the entry of the original protective order in this case).

CompuCredit's Motion seeks a broad order requiring the production of all documents called for by its subpoena on the grounds that the FDIC purportedly delayed commencing its production.  But shortly after filing, CompuCredit apparently realized its position was belied by the long record of the FDIC's expressed willingness to commence discovery upon execution of the requisite amendment to the protective order.  Thus, perhaps concerned that the FDIC would renege on its commitments, within days of filing its Motion, CompuCredit agreed to the FDIC's proposed amendment.  *See* Ex. N, Amended Protective Order.   Consistent with its representations all along, the FDIC began production of responsive documents ***just hours*** after the amendment was signed.

## I.    CompuCredit's Motion to Compel Is Premature Because the FDIC Agreed to Produce Subject to Agreement on an Appropriate Protective Order

A party's motion to compel is premature where the other party has agreed to produce documents "pursuant to an appropriate protective order entered by the Court," and the entry of a protective order after the filing of the motion to compel "enable[s]" the producing party to begin its production.  *See Equal Rights Center v. Post Properties, Inc.*, 246 F.R.D. 29, 36 (D.D.C. 2007) (denying motion to compel where producing party agreed to produce documents).

In this case, the FDIC agreed to produce documents and stated repeatedly – through both its in-house and external counsel – that the production would begin as soon as the parties agreed to a protective order.  Rather than engaging the FDIC to bring resolution to the issue and facilitate production, however, CompuCredit repeatedly stonewalled the FDIC – neither

accepting nor outright rejecting the amendment – until ultimately and without warning, CompuCredit brought this Motion. A week after bringing the Motion, CompuCredit then agreed to the amendment sought by the FDIC. Within hours of the amendment to the protective order, the FDIC began producing documents.

Just as in *Equal Rights Center*, the amendment of the protective order enabled the FDIC to begin producing documents in response to the subpoena. With the Order in place, the FDIC will continue to produce documents. Accordingly, this Motion is premature.

## II.    CompuCredit's Has Not Proffered and Has No Good Faith Basis for Pressing Its Motion Before the Court

In light of the fact that the FDIC agreed to begin producing documents immediately following the amendment of the protective order on August 22 – just as it had promised to do on multiple occasions – the FDIC requested that CompuCredit either withdraw the Motion or explain the basis upon which the Motion is now predicated, so that the parties could confer on any discovery issues that CompuCredit might presently have or foresee. While it is possible that future disagreements regarding the scope of discovery may warrant court intervention (given that the requests cover thirty-three different categories over a period spanning more than seven years), those issues are in no way ripe or framed for this Court. Notwithstanding the FDIC's detailed objections to and agreements to produce documents responsive to CompuCredit's requests, CompuCredit has made a blanket motion requesting production of all documents it sought in the first instance, including documents the FDIC has already produced. This is not an appropriate response to the FDIC's good faith efforts to respond to particular requests and commence production. Nor is it an appropriate or efficient use of the judicial system. Nonetheless, CompuCredit has refused to either withdraw the Motion or to give any additional reasons for its position that the Court's intervention is necessary.

"A motion to compel discovery or disclosure should both identify specifically the portions of the responses that are inadequate, and explain, at least briefly, what is missing or what kind of information would be necessary to make the responses adequate." *Moore's Federal Practice 3d*, § 37.05[5] (3d. ed. 2008) (citing *James N. Pappas & Sons v. McDonald's Corp.*, C.A. no. 75-1477, 1976 U.S. Dist. LEXIS 15490 at *1-2 (D.D.C. Apr. 20, 1976) (noting "that there has been little effort on the part of the principals to this motion to identify each interrogatory and answer in question and to briefly define the justification for said interrogatory, on the movant's part, *and the objections thereto, on the respondent's part*") (emphasis added)); *see also Contracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456, 459-460 (D. Kan. 1999) ("When the dispute involves objections to requested discovery, parties do not satisfy the conference requirements simply by requesting or demanding compliance with the requests for discovery.")

CompuCredit's Motion does not provide sufficient guidance as to any open areas of dispute, nor could it, in light of the fact that CompuCredit did not respond to the FDIC's efforts to meet-and-confer on its objections. CompuCredit outlines categories of documents that it views as "central to the issues raised by the FTC," and has articulated "[r]epresentative categories of the relevant documents" that it seeks. *See* Motion at pp. 5 & 9. But the FDIC has already agreed to produce many of the documents about which CompuCredit appears to complain. For instance, the training manuals sought by CompuCredit in bullet point one are public documents, as noted in the FDIC's objections to the subpoena, and furthermore, freely available to CompuCredit outside of the FDIC's discovery obligation. The second bullet point is a trick question; there are no files in which the FDIC determined that CompuCredit's materials "complied with federal law and informed consumers of this conclusion on behalf of the United

States government." As CompuCredit well knows, and as the document it cites (Motion, Ex. B) demonstrates, the FDIC "Consumer Response Center" only reviewed information provided by CompuCredit or the banks, generally, the credit cardholder agreement, to determine compliance with the minimum disclosure requirements of the Truth and Lending Act (TILA), 15 U.S.C. § 1601 *et seq.* The CRC staff did not evaluate the credit card marketing materials or whether the claims made in those materials were unfair or deceptive under Section 5, which is the subject of the instant actions. With respect to the next bullet, examiner work papers, the FDIC agreed to produce those papers that are non-privileged and materially relevant. And with respect to internal guidance and memoranda regarding enforcement of Section 5, the FDIC agreed to produce examination manuals and public Financial Institution Letters (FILs), both of which are publicly available. If CompuCredit views any of the FDIC's objections as improper, it has never voiced them or attempted to narrow any disagreement. Accordingly, because it has not engaged in the meet-and-confer process, CompuCredit's Motion is premature and the issues are not ripe for this Court's attention.

CompuCredit's failure to explain why the Motion is appropriate at this juncture suggests that the Motion is an effort to end-run its ongoing meet-and-confer obligations. By making this Motion in a Court that is not immersed in the factual and procedural issues underlying this action and the enforcement actions, CompuCredit is simply attempting to obtain an overly broad court order that the FDIC is obligated to produce "all non-privileged documents responsive to CompuCredit's subpoena." Motion, p. 11.[2] Such gamesmanship is contrary to the Court's

---

[2] There is currently extensive briefing before the court in the Northern District of Georgia on the issue of whether the subject of the FDIC's and the FTC's own interpretation of their jurisdictional authority is a relevant topic for discovery, or whether the FTC and FDIC should be entitled to a protective order precluding discovery into that issue. It is telling that CompuCredit did not disclose the state of play to this Court in seeking its broad order, as the wide scope of its discovery requests may be materially narrowed by the ruling of the court in the Northern District of Georgia.

Local Rules and should not be allowed.  *See* LCvR 7(m) (obligating counsel to meet and confer to "narrow the areas of disagreement" before making a motion); *Appleton v. F.D.A.*, 254 F.Supp.2d 6, 11 (D.D.C. 2003) (ordering the parties to "re-engage in the meet-and-confer session" where the producing party had produced documents and the party seeking additional production had not tried to narrow the dispute through conference before moving to compel); *Alexander v. Federal Bureau of Investigation*, 186 F.R.D. 185 (D.D.C. 1999) (denying motion to compel and requiring the plaintiffs to "attempt in good faith to narrow the issues of disagreement").  *See also National Shopmen Pension Fund v. Folger Adam Security, Inc.*, 274 B.R. 1, 2 n.1 (D.D.C. 2002) (noting that failure to meet-and-confer in good faith "may result in a denial of the motion at issue or sanctions").

CompuCredit has propounded its document requests.  The FDIC has lodged both general and specific objections to those requests, and begun – notwithstanding those objections – to produce documents.  If CompuCredit becomes concerned that there is some deficiency in the production, the proper way to resolve its concerns is to raise them in the meet-and-confer process, discuss the issues in a good faith effort to narrow the dispute, and only then – if necessary – invoke the limited time and resources of this Court.

The authorities cited by CompuCredit, by their contrasting facts, demonstrate the absence of any good faith basis to CompuCredit's insistence upon this Motion.  In *Flanagan v. Wyndham*, 231 F.R.D. 98, 100 (D.D.C. 2005) the motion to compel was necessary because the party from whom production was sought "allege[d] that she [did] not possess relevant and non-duplicative information"; and in *Tequila Centinela v. Bacardi & Co. Ltd*, 242 F.R.D. 1, 9-10 (D.D.C. 2007), the party from whom production was sought asserted a wholesale "relevancy" objection that would have precluded all production.  FDIC has never taken a position similar to

either of the non-producing parties in *Flanagan* or *Tequila Centinela*, as evidenced by the fact that it has consistently stated its willingness to produce and has begun producing relevant documents.[3]  CompuCredit also points to *Houston Business Journal, Inc. v. Office of the Comptroller of the Currency*, 86 F.3d 1208 (D.D.C. 1996), for the undisputed and unremarkable proposition that in a federal action it may "obtain the production of documents from [FDIC] by means of a federal subpoena."  And it cites dictum in *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) for the meaning of "relevance" under Fed. R. Civ. P. 26(b), even though there is not any ripe relevancy dispute before the Court.  CompuCredit has not pointed to a single authority that supports a good faith belief that this Court should impose the general and vague order that CompuCredit has requested, particularly under similar circumstances where the issues are as complex and wide-ranging as those in this case.

## CONCLUSION

For the foregoing reasons, the FDIC respectfully requests that CompuCredit's Motion to Compel production be denied, that the parties be directed to meet-and-confer on any future discovery disputes, and that CompuCredit be forewarned that sanctions may be imposed if, in the future, it moves to compel without exhausting the meet-and-confer process.

Dated:  August 26, 2008              Respectfully submitted,

                                     FEDERAL DEPOSIT INSURANCE CORPORATION


                                     By:  */s/ Dorothy Ashley Doherty*
                                     Dorothy Ashley Doherty
                                     DC Bar No. 336073

---

[3] To the extent that CompuCredit might now come forward, in Reply, with specific areas of disagreement to the objections stated by FDIC, this would be the first time that CompuCredit has articulated the basis of any disagreement with the FDIC's objections or attempted to narrow the areas of disagreement by means of conference.  Accordingly, an objection-by-objection analysis such as that conducted by the court in *Tequila Centinela* would also be premature, and the FDIC would respectfully request an opportunity to meet and confer with CompuCredit on those areas of disagreement and present a sur-reply before the Court takes them under consideration.

Counsel
Federal Deposit Insurance Corporation
Legal Division, Corporate Litigation Unit
3501 Fairfax Drive
VSQ D-7022
Arlington, VA 22226
Telephone: (703) 562-2377
Facsimile:  (703) 562-2477
adoherty@fdic.gov

Marguerite Sagatelian
Counsel
Federal Deposit Insurance Corporation
15 Braintree Hill Office Park
Braintree, MA  02184
Telephone:  (781) 794-5620
msagatelian@fdic.gov

Heather Walters
Counsel
Federal Deposit Insurance Corporation
550 17th St., NW, MB-3122
Washington, DC  20429
Telephone:  (202) 898-6729
hewalters@fdic.gov

OF COUNSEL:
Erik Haas, Esq.
Karla G. Sanchez, Esq.
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on counsel for Petitioner

CompuCredit Corporation, by US Mail, postage pre-paid, addressed as follows:

> Daniel Thomas Donovan, Esq.
> Kirkland & Ellis LLP
> 655 15th Street, NW
> Suite 1200
> Washington, DC 20005-5793

A courtesy copy was also served via email to: Daniel.donovan@dc.kirkland.com

> */s/ Dorothy Ashley Doherty*
> Dorothy Ashley Doherty

AO88 (Rev. 12/07) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

District of Columbia

FEDERAL TRADE COMISSION

V.

COMPUCREDIT CORPORATION
and JEFERSON CAPITAL SYSTEMS, LLC

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  1:08-cv-1976 (BBM)
U.S. District Court, Northern
District of Georgia

TO:  Executive Secretary
     FDIC
     550 17th Street, NW.
     Washington, DC 20429

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See attached Schedule A.

| PLACE    Kirkland & Ellis LLP, 655 15th St., N.W., Suite 1200, Washington, D.C. 20005 | DATE AND TIME 7/28/2008 5:00 pm |
| --- | --- |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rule of Civil Procedure 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE 7/3/92 |
| --- | --- |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Michael F. Williams, Kirkland & Ellis LLP, 655 15th St., N.W., Suite 1200, Washington, D.C. 20005 (202) 879-5000

(See Federal Rule of Civil Procedure 45 (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/07) Subpoena in a Civil Case (Page 2)

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | 7/3/2008 | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| Marguerite Sagatelian & Thomas Feeney, FDIC, WDC | Email & Federal Express - per agreement of counsel |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| Brittany Whitesell | Associate, Kirkland & Ellis LLP |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ___7/3/08___
DATE

_Brittany P. Whitesell_
SIGNATURE OF SERVER

Kirkland & Ellis LLP, 655 15th St., NW,
ADDRESS OF SERVER

Washington, D.C. 20005

Federal Rule of Civil Procedure 45 (c), (d), and (e), as amended on December 1, 2007:

(c) PROTECTING A PERSON SUBJECT TO A SUBPOENA.
(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
(2) Command to Produce Materials or Permit Inspection.
(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
(3) Quashing or Modifying a Subpoena.
(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information;
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial
(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) DUTIES IN RESPONDING TO A SUBPOENA.
(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) Claiming Privilege or Protection.
(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

## SCHEDULE A

## DEFINITIONS

The following terms and definitions apply to these Requests for Production ("Requests"):

(a)    "CB&T" means Columbus Bank & Trust, N.A., and each of its present and former affiliates, agents, assigns, directors, representatives, employees, predecessors, successors and representatives, and each person acting or purporting to act on its behalf.

(b)    "Communication" means any oral or written utterance, notation or statement of any nature whatsoever, by and to whomever made, including, but not limited to, correspondence, conversations, dialogues, discussions, interviews, consultations and other understandings between or among two or more persons.

(c)    "CompuCredit" means CompuCredit, and each of its present and former affiliates, agents, assigns, directors, representatives, employees, predecessors, successors and representatives, and each person acting or purporting to act on its behalf.

(d)    "Document" means the original (or a copy if the original is not available) and each non-identical copy (which is non-identical because of alterations, attachments, blanks, comments, notes, underlining or otherwise) of any tangible writing or record, however described, which may include without limitation any account, agreement, amendment, article, authorization, bank statement, book, chart, check, contract, correspondence, diary, drawing, email, film, tape, graph, invoice, journal, letter, memoranda, minutes, note, work papers, studies, notebook, photocopy, photograph, projection, publication, recording, report, schedule, sketch, tape, telegram, transcript, voucher, videotape or otherwise and all retrievable data (whether encarded,

taped or encoded electrostatically, electromagnetically or otherwise) in your possession, custody or control, or known to you, wherever located, however produced or reproduced, whether draft or final version. Further, Document shall include any and all information filed or stored in SOURCE, including but not limited to, any additions, deletions or other modifications to any information that was at any time filed or stored in SOURCE as well as any information sufficient to identify such additions, deletions or other modifications.

(e)     "FBD" means First Bank of Delaware and each of its present and former affiliates, agents, assigns, directors, representatives, employees, predecessors, successors and representatives, and each person acting or purporting to act on its behalf.

(f)     "FB&T" means First Bank & Trust and each of its present and former affiliates, agents, assigns, directors, representatives, employees, predecessors, successors and representatives, and each person acting or purporting to act on its behalf.

(g)     "FDIC" means the Federal Deposit Insurance Corporation, including its agents, consultants, employees, executives, representatives and any other person(s) acting or purporting to act for or on the Federal Deposit Insurance Corporation's behalf.

(h)     "Federal Reserve" means the Board of Governors of the Federal Reserve, including its agents, consultants, employees, executives, representatives and any other person(s) acting or purporting to act for or on the Board of Governors of the Federal Reserve's behalf.

(i)     "Identification" or "identify" when used in reference to:

(i)     a natural individual, requires you to state his or her full name, address and telephone number;

2

(ii)     a corporation, requires you to state its full corporate name, any names under which it does business and its state of incorporation;

(iii)    a partnership, requires you to state its full name, any name under which it does business, the state of any certificate of partnership (or other similar document) filing and the address of its principal place of business;

(iv)    a document, requires you to state the document litigation number or Bates number, if applicable, otherwise the number of pages and the nature of the document (e.g., letter, memorandum, etc.), its title, its date, the name or names of its authors and recipients and its present location or custodian;

(v)     a communication, requires you, if any part of the communication was written, to identify the document or documents which refer to, relate to or evidence the communication, and, to the extent that the communication was non-written, to identify the persons participating in or witnessing the communication, and to state the date and substance of the communication.

(j)     "FTC" means the Federal Trade Commission, including its agents, consultants, employees, representatives and any other person(s) acting or purporting to act for or on the FTC's behalf.

(k)     "OCC" means the Office of the Comptroller of the Currency, including its agents, consultants, employees, representatives and any other person(s) acting or purporting to act for or on the Office of the Comptroller of the Currency's behalf.

3

(l)    "OTS" means the Office of Thrift Supervision, including its agents, consultants, employees, representatives and any other person(s) acting or purporting to act for or on the Office of Thrift Supervision's behalf.

(m)    "Public official" means any aide, agent, assistant, commissioner, director, employee, examiner, official (whether elected or appointed), officer, secretary, staffer or supervisor of any government agency, whether federal, state or municipal, or any legislative or executive body or agency, whether federal, state or municipal, including, without limitation, any committees, subcommittees, representatives or services of the same.

(n)    "Relate(s) to" or "relating to" means information or documents that, in whole or in part, constitute, contain, embody, evidence, reflect, concern, describe, discuss, involve, identify, support, refute, refer to, are relevant to or in any way pertain to.

(o)    The singular form of a noun or pronoun includes the plural form, and the plural form includes the singular.

(p)    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of a Request all documents that otherwise might be construed to be outside of its scope.

4

# INSTRUCTIONS

(a)    The time period covered by these Requests, unless otherwise stated, is January 1, 2001 to the date of production.

(b)    These Requests are continuing in nature. In the event the FDIC obtains any additional documents that are responsive to these Requests, the FDIC shall supplement its response to each such Request and produce the additional documents promptly.

(c)    The FDIC shall produce responsive documents as they have been kept in the usual course of business or shall organize and label them to correspond to the enumerated requests.  If there is no document responsive to any particular category, the FDIC shall so state in writing.

(d)    The FDIC shall produce any Electronically Stored Information ("ESI") responsive to a Request in its native format, or as searchable TIF files, and shall produce any metadata associated with the produced ESI.

(e)    If the FDIC objects to any part of a Request, it shall set forth the basis for its objection and respond to all parts of the Request to which it does not object.

(f)    If the FDIC withholds any document responsive to a Request under a claim of privilege, it shall, for each such withheld document, provide a description of the document and a statement of the basis upon which the privilege asserted is claimed.  Such description(s) shall be sufficiently detailed to permit CompuCredit to evaluate the claim(s) of privilege.

(g)    In the event that any document called for hereby was formerly in the possession, custody or control of the FDIC and has been lost or destroyed, that document is to be identified in writing as follows:  (1) addressor, addressee, person who prepared or authorized the

5

document, indicated or blind copies; (2) date of preparation or transmittal; (3) subject matter; (4) number of pages, attachments or appendices; (5) all persons to whom distributed, date of loss or destruction; and (6) if destroyed, the manner of destruction, reason for destruction, persons authorizing destruction and persons destroying the document.

## DOCUMENT REQUESTS

1.    All documents referring or relating to CompuCredit.

2.    All documents referencing or relating to the FTC's purported jurisdiction over CompuCredit or the FDIC's jurisdiction over CompuCredit.

3.    All documents referencing or relating to the FTC's purported jurisdiction over any financial institutions or their service providers.

4.    All documents reflecting communications between FDIC and any other government agency regarding any and all proposed amendments or changes to Regulation Z since 2001.

5.    All communications and documents constituting, evidencing, reflecting, responding to or relating to any complaints or other communications received from consumers or other individuals relating to any credit card issued by CB&T, FB&T or FBD for which CompuCredit provided services.

6.    All documents relating to any examination, visitation or review of CompuCredit during the relevant period, including any reports, summaries, communications or work papers.

7.    All documents relating to any examination, visitation or review of each of CB&T, FB&T or FBD related in any way to CompuCredit during the relevant period.

6

8. All documents sufficient to identify each examiner who participated in any examination, visitation or review of CompuCredit during the relevant period.

9. All documents sufficient to identify any examiner who participated in any examination, visitation or review of each of CB&T, FB&T or FBD during the relevant period.

10. All documents of any examiner who participated in any examination, visitation or review of CompuCredit during the relevant period or of any supervisor of such examiner, relating to the CompuCredit.

11. All documents of any examiner who participated in any examination, visitation or review of CB&T, FB&T or FBD during the relevant period or of any supervisor of such examiner, relating in any way to CompuCredit.

12. All documents that were sent or received by any examiner that participated in any examination, visitation or review of CompuCredit during the relevant period or by any supervisor of such examiner, relating in any way to CompuCredit.

13. All documents that were sent or received by any examiner that participated in any examination, visitation or review of CB&T, FB&T or FBD during the relevant period or by any supervisor of such examiner, relating in any way to CompuCredit.

14. All documents relating to any surveys, analyses or copy tests performed or commissioned by the FDIC relating to any credit card issued by CB&T, FB&T or FBOD for which CompuCredit provided services.

15. All documents relating to any analyses of credit card solicitations or fulfillment materials of any other person or entity that markets credit cards.

16. All documents, including policies, procedures, manuals, guidance, instructions or training materials, that FDIC has provided to its personnel, including but not limited to its

7

personnel in the Consumer Response Center, relating to the consideration and response to complaints and other communications received from consumers or other individuals, and any addition or amendment to such documents during the relevant period.

17.    All documents, including policies, procedures, manuals, guidance, instructions, statements, or training materials that FDIC has created internally or received from an outside source or other government agency to provide instruction to its examiners and compliance specialists relating to Section 5 of the Federal Trade Commission Act, and any addition or amendment to such documents during the relevant period.

18.    All documents, including policies, procedures, manuals, guidance, instructions, statements or training materials that FDIC has created internally or received from an outside source or other government agency relating to implementation of Financial Institution Letters 57-2002 (May 30, 2002) and 26-2004 (March 11, 2004), and any addition or amendment to such documents during the relevant period.

19.    All documents constituting, evidencing, reflecting or relating to any FDIC regulations, policies, guidelines, press releases or public statements concerning enforcement of the Truth in Lending Act ("TILA") or Section 5 of the FTC Act with respect to credit card solicitations, credit card practices or activities or the disclosure of credit card terms and conditions.

20.    All documents sufficient to identify all banks, bank service providers or other entities that have been accused, cited or sanctioned by the FDIC for any violations of Section 5 of the Federal Trade Commission Act.

8

21. All documents referencing or relating to the FDIC's document retention policies or the FDIC's efforts to retain documents in connection with CompuCredit, CB&T, FB&T or FBD.

22. All documents referencing or relating to meetings held from and after January 1, 2005 with any official or staff member of any federal bank regulatory agency (including without limitation the FDIC, the OCC, the OTS and the Federal Reserve) relating to credit card solicitations, credit card practices or activities, or the disclosure of credit card terms and conditions.

23. All documents that reflect or relate to any meeting or communication by any FDIC employee, agent or official with any public official or government agency relating to CB&T, FB&T, FBD or CompuCredit.

24. All documents that reflect or relate to any meeting or communication by any FDIC employee, agent or official with any public official relating to credit card solicitations, credit card practices or activities, the disclosure or credit card terms and conditions or subprime lending or credit financing.

25. All documents that reflect or relate to any meeting or communication by any FDIC employee, agent or official with any other government agency relating to credit card solicitations, credit card practices or activities, the disclosure of credit card terms and conditions or subprime lending or credit financing.

26. All documents reflecting communications or meetings between, and documents received from or provided to, any FDIC employee, agent or official and any non-governmental third party, including without limitation any political advocacy organization, consumer advocacy

9

organization, non-profit organization, private commercial entity or individual employed by or acting on behalf of the same, relating in any way to CompuCredit, CB&T, FB&T or FBD.

27.    All documents relating to CompuCredit in connection with NextBank, National Association, Phoenix, Arizona.

28.    All documents reflecting any communication between CB&T and FDIC relating to CompuCredit or the negotiation, terms and issuance of the Order to Cease and Desist and Order to Pay and the Order for Restitution issued to CB&T on June 9, 2008.

29.    All documents that relate to the determination of the amount of the civil money penalty assessed against CB&T in the Order to Cease and Desist and Order to Pay dated June 9, 2008.

30.    All documents that relate to the determination of the amount of the restitution assessed against CB&T in the Order for Restitution dated June 9, 2008.

31.    All documents that relate to the determination by the FDIC of the amount of the penalty assessed against CompuCredit in the Notice of Charges dated June 10, 2008 issued by the Federal Deposit Insurance Corporation against CompuCredit Corporation, Case Number FDIC-08-139b, FDIC-08-140k, including but not limited to documents discussing the thirteen factors enumerated in the Interagency Policy Regarding the Assessment of Civil Money Penalties, dated June 3, 1998, and Section 14.1-1 of the FDIC Risk Management Manual of Examination Policies or any civil money penalty matrix.

32.    All documents relating to the FDIC's Examination Manual for Credit Card Activities and "Third Party Relationships."

10

33.    All documents, witness statements, affidavits, recordings or similar documents relating to or memorializing statements of individuals with credit cards issued by CB&T, FB&T or FBD or provided by such individuals.

Dated: July 3, 2008

Pat A. Cipollone
Email: pcipollone@kirkland.com
Daniel T. Donovan
Email: ddonovan@kirkland.com
Rebecca R. Anzidei
Email: ranzidei@kirkland.com
Michael F. Williams
Email: mwilliams@kirkland.com
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C.  20005
Tel: (202) 879-5000
Fax: (202) 879-5200

Brian C. McCormally
Email: Brian.McCormally@aporter.com
David B. Bergman
Email: David.Bergman@aporter.com
Robert M. Clark
Email: Robert.Clark@aporter.com
ARNOLD & PORTER LLP
555 Twelfth Street, NW
Washington, DC  20004
Tel: (202) 942-5000
Fax: (202) 942-5999

Jeffrey O. Bramlett
Georgia Bar No. 075780
Email:  bramlett@bmelaw.com
Michael B. Terry
Georgia Bar No. 702582
Email: terry@bmelaw.com
Sarah M. Shalf
Georgia Bar No. 637537
Email:  shalf@bmelaw.com
BONDURANT, MIXSON & ELMORE, LLP
1201 West Peachtree St. NW
Suite 3900
Atlanta, GA  30309
Tel: (404) 881-4100
Fax: (404) 881-4111

**Attorneys for Defendant**

# ARNOLD & PORTER LLP

Erica Taylor McKinley
Erica.McKinley@aporter.com

202.942.5029
202.942.5999 Fax

555 Twelfth Street, NW
Washington, DC 20004-1206

August 6, 2008

<u>Via Electronic Mail</u>

Marguerite Sagatelian, Esq.
Federal Deposit Insurance Corporation
15 Braintree Hill Office Park
Braintree, MA  02184
msagatelian@fdic.gov

      Re:    *In the Matter of CompuCredit Corporation*, (FDIC 08-139b) (FDIC 08-140k)

Dear Ms. Sagatelian:

      Enclosed please find Respondent CompuCredit Corporation's First Request for Production of Documents to the FDIC in the above-captioned administrative enforcement matter.  CompuCredit requests that the FDIC produce the responsive documents for inspection and copying no later than September 4, 2008.

      Please contact me if you have any questions.  I can be reached via telephone at (202) 942-5029.

      Sincerely,

      Erica Taylor McKinley

cc (via electronic mail only):

Robert Clark      A.T. Dill
Brian McCormally      Andrea Fulton Toliver
David Bergman      Heather M. Walters
Pat A. Cipollone

**FEDERAL DEPOSIT INSURANCE CORPORATION**
**WASHINGTON, DC**

| | |
|---|---|
| **IN THE MATTER OF** )<br>)<br>)<br>COMPUCREDIT CORPORATION )<br>ATLANTA, GEORGIA )<br>)<br>An Institution-Affiliated Party of: )<br>)<br>COLUMBUS BANK & TRUST COMPANY )<br>COLUMBUS, GEORGIA )<br>)<br>(Insured State Nonmember Bank) )<br>) | FDIC-08-139b<br>FDIC-08-140k |

**RESPONDENT COMPUCREDIT'S FIRST REQUEST FOR**
**PRODUCTION OF DOCUMENTS TO FDIC**

Pursuant to Rule 25 of the FDIC Rules of Practice and Procedure, 12 C.F.R. §308.25,

Respondent CompuCredit Corporation ("CompuCredit"), by its undersigned attorneys, request

that the Federal Deposit Insurance Corporation produce the requested documents for inspection

and copying no later than September 4, 2008, at the offices of Arnold & Porter LLP, 555 Twelfth

Street, N.W., Washington, D.C. 20004, or at such time and place as may be agreed upon by all

counsel.

**DEFINITIONS AND INSTRUCTIONS**

Notwithstanding any definition set forth below, each word, term, or phrase used in this

Request is intended to have the broadest meaning permitted under the Rules of Practice and

Procedure. As used in this Request, the following terms are to be interpreted in accordance with

these definitions:

1. "Communication," includes any and all methods or forms of communicating, including but not limited to, face-to-face, telephone, fax, letter, email, and memo.

2. "Document" shall include, but is not limited to, an electronic or computerized data compilation (including e-mail and other computer-readable files), whether or not printed, stored, or displayed, and any preliminary versions, drafts or revisions thereof, memorandum, letter, correspondence, electronic mail, report, note, message slip, telephone log, diary, journal, calendar, electronic organizer entry, writing, drawing, spreadsheet, presentation, ledger, minutes, financial report or record, draft, facsimile, contract, invoice, record of purchase or sale, graph, chart, photograph, video or audio tape, transcript, index, directory, or any other written, printed, typed, punched, taped, filmed or graphic matter however produced, stored, or reproduced. Document also includes the file, folder tabs and labels appended to or containing any documents, as well as any metadata applicable to any Document.

3. "Notice" shall mean the Notice of Charges for an Order to Cease and Desist and for Restitution; Notice of Assessment of Civil Money Penalties; Findings of Fact and Conclusions of Law; Order to Pay; and Notice of Hearing filed against CompuCredit on June 18, 2008.

4. The terms "relate" and "relating to" mean concerning, referring to, constituting, embodying, connected to, in connection with, comprising, regarding, evidencing, describing, identifying, stating, analyzing, containing information concerning, and/or in any way pertinent to the subject matter of this action.

5. "State," "Describe," or "Identify" means to set forth every fact relevant to the response and to set forth such facts fully and unambiguously.

6. Bank:  The term "Bank" shall mean Columbus Bank & Trust, Columbus, Georgia, and all of its officers, directors, employees, agents, consultants and attorneys.

7. Person:  The term "person" is defined as any natural person or any business, legal or governmental entity, or association.

8. You/Your:  The terms "you" or "your" include the person(s) to whom this Request is addressed, and all of that person's officers, directors, agents, employees, representatives, attorneys, affiliates, parent companies, and subsidiaries, where applicable.

9. In order to bring within the scope of these requests all information that might otherwise be construed to be outside of their scope, the following rules of construction apply:  (i) the singular shall include the plural and vice versa; (ii) the masculine, feminine or neuter pronoun shall not exclude other genders; (iii) the connectives "and" and "or" shall be read either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside its scope; (iv) the terms "any," "all" or "each" shall be read to mean any, all, each and every; and (v) the word "including" shall be read to mean including without limitation; (vi) the present tense of a term shall be construed to include the past and future tenses of the term and vice versa; and (vii) references to employees, officers, directors or agents shall include both current and former employees, officers, directors and agents.

10. Your response shall include all information known to you or otherwise available to you, including information within the knowledge or possession of your attorneys, investigators, or other agents.  Where a complete answer to a particular request is not possible, the request should be answered to the extent possible and a statement should be made indicating why only a partial answer is given.

11. These requests call for the production of documents or identification of information that is in the possession, custody or control of FDIC, regardless of location, including any current and former counsel. In the event that a copy of a requested document is not identical to any other copy of the same document, by reason of alterations, marginal notes, comments, etc., all non-identical copies shall be produced. All documents that are physically attached to each other when located for production shall be left so attached.

12. If any information called for by any request herein is withheld because you claim that such information is protected from discovery by the attorney work product doctrine or by any privilege, state the following with respect to such information:

   A.    The applicable date(s);

   B.    The identity(ies) of the author(s) or maker(s), including the business or legal title(s) or position(s);

   C.    The identity of the recipient, including business or legal title or position;

   D.    The subject matter(s);

   E.    The identity(ies) of all other persons who received copies or otherwise learned of the communication; and

   F.    The specific factual basis of the claimed privilege or other protection from discovery.

13. If information is redacted from a document produced pursuant to any of the requests herein, identify the redaction by stamping the word "Redacted" on the document at the place where information has been redacted and separately log each redaction on the privilege log.

14. If, in the course of responding to these requests, you encounter any ambiguity in either the request, a definition, or instruction relevant to the request, explain what you find to be ambiguous and what construction you used in providing your answer.

15. If you are withholding the document for any reason other than an objection that it is beyond the scope of discovery or that a request is unduly burdensome, identify as to each document and, in addition to the information requested in paragraph 12 above, please state the reason for withholding the document.

16. When a document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible without thereby disclosing the privileged material. If a privilege is asserted with regard to part of the material contained in a document; the party claiming the privilege must clearly indicate the portions as to which the privilege is claimed. When a document has been redacted or altered in any fashion, identify as to each document the reason for the redaction or alteration, the date of the redaction or alteration, and the person performing the redaction or alteration. Any redaction must be clearly visible on the redacted document.

17. If production of any requested document(s) is objected to on the grounds that production is unduly burdensome, describe the burden or expense of the proposed discovery.

18. Unless specified otherwise, the relevant time periods for these requests shall be January 1, 2001 to the present.

19. If the requested documents are maintained in a file, the file folder is included in the request for production of those documents.

20. These requests are intended to be continuing in nature and must be supplemented as required by the Rules of Practice and Procedure.

## DOCUMENT REQUESTS

1. All work papers prepared in connection with any examination, visitation or review of the Bank during the relevant period.

2. All work papers prepared in connection with any examination, visitation or supervisory review of CompuCredit during the relevant period.

3. All documents sufficient to identify each examiner who participated in any examination, visitation or supervisory review identified in response to Requests 1 and 2.

4. All documents, including any notes or handwritten notations on documents, relating to CompuCredit or the Bank retained by, and in the possession, custody or control of, any examiner who participated in any examination, visitation or review identified in response to Requests 1 and 2, above, or of any supervisor of such examiner.

5. All email messages, and attachments thereto, relating to CompuCredit or the Bank that were sent or received by any examiner who participated in any examination, visitation or review identified in response to Requests 1 and 2, above, or by any supervisor of such examiner.

6. Any documents relating to any awards, commendations or bonuses conferred upon any examiner that participated in the examination, visitation or review identified in response to Requests 1 and 2, above, or any supervisor of such examiner.

7. All documents that comprise or are sufficient to identify any additions, deletions or other modifications to the work papers identified in response to Requests 1 and 2 that were made after the filing of such work papers.

8. All information filed or stored in SOURCE relating to the Bank or CompuCredit.

9. All documents that comprise or are sufficient to identify any additions, deletions or other modifications to any information filed or stored in SOURCE at any time and that refer or relate to  the documents requested in Request 8, above.

10. All documents that comprise the report of any examination, visitation or supervisory review of the Bank or CompuCredit.

11. All documents relating to consumer complaints received by FDIC that relate to any credit card issued by the Bank and for which marketing services were provided by CompuCredit, and all documents that comprise or relate to the processing and consideration of, and response to, each such complaint.

12. All documents that relate to any formal or informal consultation between examiners and FDIC Regional or Washington Office staff concerning any act or practice by the Bank that was considered potentially to be unfair or deceptive in violation of section 5 of the Federal Trade Commission Act, whether identified during an examination, through a consumer compliant, or from another source.

13. All manuals, guidance or training materials provided to FDIC personnel relating to the consideration and response to consumer complaints, and any addition or amendment to such manuals, guidance or materials during the relevant period.

14. All manuals, guidance or training materials provided to FDIC examiners and compliance specialists relating to compliance with Section 5 of the Federal Trade Commission Act, and any addition or amendment to such manuals, guidance or materials during the relevant period.

15. All manuals, guidance or training materials provided to FDIC examiners and compliance specialists relating to implementation of Financial Institution Letters 57-2002 (May 30, 2002) and 26-2004 (March 11, 2004) , and any addition or amendment to such manuals, guidance or materials during the relevant period.

16. All documents that relate to any meeting or communication with any person outside of the FDIC related to the development of any of the materials identified in response to Requests 13-15.

17. All documents sufficient to identify all banks or other entities that have been accused, cited or sanctioned by the FDIC for any violations of Section 5 of the Federal Trade Commission Act.

18. All documents issued to FDIC officials or employees directing them not to destroy any records relating to the Bank or CompuCredit.

19. All documents that relate to any meeting or communication by any FDIC employee, agent or Board member with any member of Congress, any committee or subcommittee thereof, or any member of congressional staff, relating to the Bank or CompuCredit.

20. All documents that relate to any meeting or communication by any FDIC employee, agent or Board member with any member of Congress, any committee or subcommittee thereof, or any member of congressional staff, relating to subprime credit cards.

21. All documents that relate to any meeting or communication by any FDIC employee, agent or Board member with any government agency relating to the Bank or CompuCredit.

22. All documents that relate to any meeting or communication by any FDIC employee, agent or Board member with any government agency relating to subprime credit cards.

23. All documents that relate to any meeting or communication by any FDIC employee, agent or Board member with any private organization, including any nonprofit organization, relating to the Bank or CompuCredit.

24. All documents that relate to any meeting or communication by any FDIC employee, agent or Board member with any private organization, including any nonprofit organization, relating to subprime credit cards.

25. All documents that relate to any meeting or communication by any FDIC employee, agent or Board member with any of the organizations listed below, or any officer, director or employee thereof, relating to the Bank or CompuCredit:

    A.      American Association of Retired Persons;

    B.      Center for Responsible Lending;

    C.      Consumer Action;

    D.      Consumer Federation of America;

    E.      Consumers Union;

    F.      Demos;

    G.      National Council of La Raza;

    H.      National Consumer Law Center; and

    I.      US PIRG.

26. All documents that relate to any meeting or communication by any FDIC employee, agent or Board member with any of the organizations listed below, or any officer, director or employee thereof, relating to subprime credit cards:

    A.      American Association of Retired Persons;

    B.      Center for Responsible Lending;

    C.      Consumer Action;

    D.      Consumer Federation of America;

    E.      Consumers Union;

    F.      Demos;

G.     National Council of La Raza;

H.     National Consumer Law Center; and

I.     US PIRG.

27. All telephone logs or appointment book entries that relate to any meeting or communication by any FDIC Board member identified in response to Requests 19-26.

28. All documents that relate to the review and approval by internal or external counsel for the Bank of "all materials, including solicitation materials, used in the Aspire and Majestic credit card programs," that were provided to FDIC by the Bank in response to a letter from Regional Director Mark Schmidt, dated October 5, 2006.

29. All documents that relate to any communication between the Bank and FDIC relating to the negotiation, terms and issuance of the Order to Cease and Desist and Order to Pay and the Order for Restitution issued to the Bank and dated June 9, 2008.

30. All documents that relate to the determination of the amount of the civil money penalty assessed against the Bank in the Order to Cease and Desist and Order to Pay issued to the Bank and dated June 9, 2008.

31. All documents that relate to the determination of the amount of the restitution assessed against the Bank in the Order for Restitution issued to the Bank and dated June 9, 2008.

32. All documents or deposition testimony obtained by the FDIC pursuant to its agreement with the Bank, as memorialized in paragraph 4 of the Order for Restitution issued to the Bank and dated June 9, 2008.

33. All documents that relate to any communications between FDIC and the Bank relating to any documents or deposition testimony identified in response to Request 32.

34. All documents on which FDIC relies in making the contention in paragraph 3 of the Notice that CompuCredit is an institution-affiliated party of the Bank.

-10-

35. All documents on which FDIC relies in making the contention in paragraph 16 of the Notice that consumers were misled "into believing that they would receive a Visa credit card with $300 in available credit."

36. All documents sufficient to identify each person, known to FDIC, that claims to have been misled as averred in paragraph 16 of the Notice.

37. Each solicitation that FDIC contends is false or misleading or a deceptive practice, as alleged in paragraph 41 of the Notice.

38. All documents on which FDIC relies in making the contention in paragraph 45 of the Notice that consumers were misled "into believing that they would receive credit cards with available credit up to a certain amount and that the card could be used for any purpose."

39. All documents sufficient to identify each person, known to FDIC, that claims to have been misled as averred in paragraph 45 of the Notice.

40. Each solicitation that FDIC contends is false or misleading or a deceptive practice, as alleged in paragraph 64 of the Notice.

41. All documents on which FDIC relies in making the contention in paragraph 68 of the Notice that consumers were misled "into believing that they would immediately receive credit cards, with their prior debts transferred to the new cards and reported to consumer reporting agencies as paid in full."

42. All documents sufficient to identify each person, known to FDIC, that claims to have been misled as averred in paragraph 68 of the Notice.

43. All documents on which FDIC relies in making the contention in paragraph 73 of the Notice that consumers were led " to believe that: (a) they would immediately receive a

-11-

Majestic card upon acceptance of their "Pre-Approved" application; and (b) their charged

off debt would be immediately transferred to a Majestic credit card account and reported

to consumer reporting agencies as "paid in full."

44. All documents sufficient to identify each person, known to FDIC, that claims to have

been led to believe as averred in paragraph 73 of the Notice.

45. Each solicitation that FDIC contends is false or misleading or a deceptive practice, as

alleged in paragraph 77 of the Notice.

46. All documents on which FDIC relies in making the contention in paragraph 79 of the

Notice that the "acts or practices described in 6 through 78 above resulted in unjust

enrichment to CompuCredit."

47. All documents on which FDIC relies in making the contention in paragraph 80 of the

Notice that the "acts or practices described in 6 through 78 above involved a reckless

disregard for the law."

48. All documents that relate to the determination by the FDIC of the amount of the penalty

assessed against CompuCredit in the Order to Pay.

49. All documents that relate to the FDIC's consideration of the thirteen factors enumerated

in the Interagency Policy Regarding the Assessment of Civil Money Penalties, dated June

3, 1998, and Section 14.1-1 of the FDIC Risk Management Manual of Examination

Policies that FDIC was required to consider in determining whether to impose a civil

money penalty against CompuCredit.

50. All documents that relate to the FDIC's consideration of the "appropriateness of the

penalties with respect to the size of the financial resources and good faith of

CompuCredit, the gravity of the violations, the history of previous violations, and such other matters as justice may require," as averred in paragraph 83 of the Notice.

51. All versions of any civil money penalty matrix prepared by FDIC in determining the amount of the penalty assessed against CompuCredit in the Order to Pay.

52. All documents that were obtained or generated during, or that otherwise relate to, the investigation by the FDIC relating to the Bank, Matter No. FDIC-06-120n.

53. The transcripts of all sworn statements, including exhibits thereto, taken by the FDIC in connection with its order of investigation relating to the Bank, Matter No. FDIC-06-120n.

54. The transcript of the sworn statement of John Hogan, and all exhibits thereto, taken by the FDIC in connection with its order of investigation relating to the Bank, Matter No. FDIC-06-120n.

55. The transcript of the sworn statement of K.K. Srinivasan, and all exhibits thereto, taken by the FDIC in connection with its order of investigation relating to the Bank, Matter No. FDIC-06-120n.

56. The transcript of the sworn statement of John Hashman, and all exhibits thereto, taken by the FDIC in connection with its order of investigation relating to the Bank, Matter No. FDIC-06-120n.

57. All documents comprising or relating to any surveys or copy tests performed or commissioned by the FDIC relating to CompuCredit credit card solicitations or fulfillment materials.

58. All documents comprising or relating to any analyses of credit card solicitations or fulfillment materials of any other person or entity that markets credit cards, including comparisons of such other solicitations and fulfillment materials with those of CompuCredit.

Dated:  August 6, 2008                    Respectfully submitted,

                                          /s/ Robert M. Clark
                                          Brian C. McCormally, D.C. Bar No. 501978
                                          David Bergman, D.C. Bar No. 435392
                                          Robert M. Clark, D.C. Bar No. 366807
                                          Erica Taylor McKinley, D.C. Bar No. 467884
                                          ARNOLD & PORTER LLP
                                          555 Twelfth Street, N.W.
                                          Washington, D.C. 20004
                                          Telephone:  (202) 942-5000
                                          Facsimile:   (202) 942-5999

                                          Pat A.Cipollone, D.C. Bar No. 448133
                                          Daniel T. Donovan, D.C. Bar No. 459680
                                          Rebecca Ruby Anzidei, D.C. Bar No. 468153
                                          Michael L. Williams, D.C. Bar No. 486190
                                          Kirkland & Ellis LLP
                                          655 Fifteenth Street, N.W.
                                          Washington, D.C. 20005
                                          Telephone:  (202) 879-5000
                                          Facsimile:   (202) 879-5200

                                          Attorneys for Respondent
                                          CompuCredit Corporation

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 6, 2008, Respondent CompuCredit Corporation's First Request for Production of Documents to FDIC was served by electronic mail upon the following persons:

Marguerite Sagatelian, Esq.
Federal Deposit Insurance Corporation
15 Braintree Hill Office Park
Braintree, MA  02184
msagatelian@fdic.gov

A.T. Dill, Esq.
Heather Walters, Esq.
Federal Deposit Insurance Corporation
550 17th Street, N.W.
Washington, D.C.  20429
adill@fdic.gov
hewalters@fdic.gov

Andrea Fulton Toliver, Esq.
Federal Deposit Insurance Corporation
10 Tenth Street, N.W.
Suite 800
Atlanta, GA  30309
atoliver@fdic.gov

Pat Cipollone, Esq.
Kirkland Ellis LLP
655 Fifteenth Street, N.W.
Washington, DC  20005
pcipollone@kirkland.com

/s/ Erica Taylor McKinley
Erica Taylor McKinley

**FEDERAL DEPOSIT INSURANCE CORPORATION**

**WASHINGTON, D.C.**

| | | |
|---|---|---|
| _____ | ) | |
| In the Matter of | ) | |
| | ) | STIPULATED |
| COMPUCREDIT CORPORATION | ) | PROTECTIVE ORDER |
| ATLANTA, GEORGIA | ) | |
| | ) | |
| An Institution-Affiliated Party of: | ) | FDIC-08-139b |
| | ) | FDIC-08-140k |
| COLUMBUS BANK AND TRUST COMPANY | ) | |
| COLUMBUS, GEORGIA | ) | |
| | ) | |
| (Insured State Nonmember Bank) | ) | |
| | ) | |
| _____ | ) | |

IT IS STIPULATED AND AGREED by and among counsel for Respondent and

Enforcement Counsel for the Federal Deposit Insurance Corporation (FDIC), that Respondent,

the FDIC, their respective counsel, and others as described shall be bound by the following

PROTECTIVE ORDER which may be entered by the Administrative Law Judge without further

notice:

1.      As used in this PROTECTIVE ORDER, the word "document(s)" includes any

written, printed, typed or other graphic material of any kind or nature from which information

can be obtained, including matter stored electronically or magnetically.

2.      A party (including third parties who are served with subpoenae) may designate as

confidential such documents produced, provided, or disclosed in response to a discovery request,

or filed in this action, that the party in good faith believes contain: (a) trade secrets, research and

development, or confidential business information, which is not already available to the public

and which if revealed to the public would likely subject the party to a competitive disadvantage;

(b) exempt records and information as defined in 12 C.F.R. Part 309; and (c) personally

identifiable information (PII).  For purposes of this PROTECTIVE ORDER,  PII includes: (i) an

individual's social security number, or an individual's name, address, or phone in combination

with one or more of the following: date of birth; driver's license number, passport number,

financial account number; or credit card or debit card number; and (ii) medical records and other

individually identifiable health information relating to past, present, or future physical or mental

health or condition of an individual, and to the provision of or payment for health care to an

individual.  Documents designated by a party as confidential pursuant to this PROTECTIVE

ORDER shall be treated as CONFIDENTIAL DOCUMENTS for purposes of this

PROTECTIVE ORDER.

      3.     CONFIDENTIAL DOCUMENTS shall be identified by affixing a stamp reading

"CONFIDENTIAL PURSUANT TO STIPULATED PROTECTIVE ORDER," or some similar

designation with reference to the case numbers, to each page of the document as well as on disks

and other media.

      4.     A party who wishes to designate as confidential portions of a transcript or

recording of hearing testimony shall do so within five business days after receiving such

transcript or recording.  Until such time expires, the entire transcript shall be treated as a

CONFIDENTIAL DOCUMENT.

      5.     If a party produces CONFIDENTIAL DOCUMENTS and inadvertently fails to

mark the information as CONFIDENTIAL, it may correct its failure in writing, accompanied by

sufficient copies of the item properly marked so that the receiving parties may substitute them

for the previously unmarked copies.  The receiving party shall make such substitution and return

to the designating party (or certify the destruction of) any and all unmarked copies of the item in

the party's possession, including electronic copies.  The documents shall be deemed

2

CONFIDENTIAL DOCUMENTS, and their use and disclosure shall be subject to the terms of this PROTECTIVE ORDER, only after the designating party gives notice of the correction.

6.    Documents that are designated confidential and that subsequently become publicly available lose their status as CONFIDENTIAL DOCUMENTS unless the information was made public in violation of this PROTECTIVE ORDER.

7.    This PROTECTIVE ORDER applies to all documents referenced in paragraph 2, including also any copy, extract, and complete or partial summary of any such document; any portion of any brief, memorandum, or any other writing or exhibit thereto which discloses the contents of any such document; and any information contained in or obtained from any such document (hereafter collectively referred to as "CONFIDENTIAL DOCUMENTS").

8.    A party may object to the designation of CONFIDENTIAL DOCUMENTS by letter delivered to counsel for the designating party.  The parties shall make good faith efforts to resolve their disagreement.  If the disagreement is not resolved, the party may file a motion with the Administrative Law Judge for a determination as to the propriety of the designation.  Until such motion is resolved, the documents shall be treated as CONFIDENTIAL DOCUMENTS.

9    For documents other than PII, the party designating a document as confidential shall bear the burden of proof with regard to its status.  The burden of establishing that PII should not be considered confidential is on the party seeking to challenge the designation of PII as confidential.

10.    Failure to object to the designation of CONFIDENTIAL DOCUMENTS does not constitute an admission, or a finding by the Administrative Law Judge, that the document is in fact confidential and should be treated as a CONFIDENTIAL DOCUMENT.

11.     The CONFIDENTIAL DOCUMENTS shall be used by parties only in the preparation and hearing of this administrative proceeding, the civil action brought by the FTC against, *inter alia*, CompuCredit Corporation, captioned *Federal Trade Commission v. CompuCredit Corporation et al.*, 1:08-cv-1976 (BBM), U.S. District Court, Northern District of Georgia (FTC Action), the civil action captioned *First Bank of Delaware v. FDIC*, Civil Action No. 08-429, U.S. District Court, District of Delaware, and the civil action captioned *CompuCredit Corporation v. FDIC*, Civil Action No. 08-430, U.S. District Court, District of Delaware, and for no other purpose; and shall not be delivered, exhibited or disclosed to any person, except:

  (a)    the Administrative Law Judge and persons employed by the Office of Financial Institution Adjudication,

  (b)    the parties and their attorneys of record (including such attorneys' employees) in this proceeding;

  (c)    the parties and their attorneys in the proceedings identified above;

  (d)    such experts, consultants, and advisors as may be retained by the parties or their attorneys of record to assist in the preparation and hearing of this proceeding and the proceedings identified above;

  (e)    such persons to whom testimony or evidence is required to be given pursuant to subpoena or other legal process in this proceeding; and

  (f)    such other persons who may be called as witnesses to provide relevant testimony in connection with the CONFIDENTIAL DOCUMENTS in this proceeding.

4

12.     The CONFIDENTIAL DOCUMENTS shall not be copied by any party except for the purpose of delivery, exhibition and/or disclosure set forth in paragraph 11 hereof.  All persons authorized to have access to the CONFIDENTIAL DOCUMENTS shall take reasonable precautions to prevent disclosure of the information in any manner inconsistent with this PROTECTIVE ORDER.

13.     Any person, other than an official or employee of the FDIC and persons listed in paragraph 11 (a) - (c) above, to whom the parties and/or their attorneys of record propose to make delivery, exhibition, or disclosure of any CONFIDENTIAL DOCUMENT described in this PROTECTIVE ORDER shall: (a) be advised of the terms of this PROTECTIVE ORDER; and (b) execute two duplicate originals of a Declaration Acknowledging Protective Order Re Confidential Information and Documents (Declaration) in the form attached hereto as Appendix A.  Each such person shall be subject to and bound by the terms of this PROTECTIVE ORDER.  Counsel for the parties shall not be required to produce the signed Declarations until the conclusion of this case, including all available appeals.  At that time, counsel shall deliver a signed original of each Declaration to Enforcement Counsel for the FDIC.

14.     With respect to any document filed in this proceeding including, but not limited to, pleadings and memoranda, the parties shall refrain form including, or shall redact the following personally identifiable information, unless otherwise ordered:

        (a) Social Security Numbers – if an individual's social security number must be included, numbers other than the last four digits shall be redacted;

        (b) Dates of Birth – if an individual's date of birth must be included, the month and date shall be redacted;

(c) Financial Account Information – If a financial account number is relevant to the proceeding, numbers other than the last four digits of the account number shall be redacted.

15.    Any CONFIDENTIAL DOCUMENT, if filed with the Administrative Law Judge or the Office of Financial Institution Adjudication, or otherwise made a part of the record of this proceeding prior to the evidentiary hearing, shall be filed under seal and conspicuously marked "CONFIDENTIAL - NOT TO BE OPENED WITHOUT THE APPROVAL OF THE HONORABLE C. RICHARD MISERENDINO, PURSUANT TO PROTECTIVE ORDER DATED JULY 28, 2008."

16.    At the conclusion of this case, including all available appeals, any person having custody or control of CONFIDENTIAL DOCUMENTS produced by or obtained by either party in this proceeding shall forthwith return such documents to counsel for the party from whom such documents were obtained.  Notwithstanding the foregoing, counsel may retain copies of all public transcripts, hearing exhibits, and public pleadings and attachments, provided that counsel maintain the confidentiality and control of such documents consistent with this PROTECTIVE ORDER.  In lieu of returning the CONFIDENTIAL DOCUMENTS, counsel may, with the agreement of opposing counsel, shred or destroy such documents, and delete any electronically stored copies of the CONFIDENTIAL DOCUMENTS.  In such event, counsel for the party shredding, destroying and deleting such CONFIDENTIAL DOCUMENTS shall provide written confirmation to opposing counsel that the CONFIDENTIAL DOCUMENTS have been shredded, destroyed, and deleted.

17.    Nothing in this PROTECTIVE ORDER shall be deemed to be a waiver by the FDIC, Respondents, or any institution or organization listed in 12 U.S.C. § 1818(e)(7) of any legal right or privilege applicable to the CONFIDENTIAL DOCUMENTS or information

contained therein or obtained therefrom, or to any other request for disclosure or discovery procedure available in this or any other action.

18.     Nothing in this PROTECTIVE ORDER shall limit access to or use of the CONFIDENTIAL DOCUMENTS by officials or employees of the FDIC in the performance of their official duties, nor preclude or limit disclosure of any document, including the CONFIDENTIAL DOCUMENTS, by the FDIC in accordance with the provisions of Part 309 of the FDIC Rules and Regulations, 12 C.F.R. Part 309.

19.     Any person granted access to the CONFIDENTIAL DOCUMENTS described herein, who uses such CONFIDENTIAL DOCUMENTS or any information contained therein or obtained therefrom for any purpose other than as provided or permitted by the terms of this PROTECTIVE ORDER, may be subject to appropriate sanctions.

20.     This PROTECTIVE ORDER does not affect the disclosure by any party of any information contained in the CONFIDENTIAL DOCUMENTS if the information has been provided or has been made available to such party from a source other than the CONFIDENTIAL DOCUMENTS, nor prevent any party from disclosing confidential information prepared by or pertaining to such party.

21.     Nothing in this PROTECTIVE ORDER shall be deemed to preclude any party from seeking and obtaining, upon an appropriate showing (i) such additional protection for any specific information; or (ii) a modification of this PROTECTIVE ORDER.

22.     Nothing contained herein shall be construed to prejudice any party's right to use any CONFIDENTIAL MATERIALS or other information for any purpose in this litigation.

23.     Nothing contained herein shall be construed to affect in any way the admissibility of any document, testimony, or other evidence at hearing.

24.     If a party through inadvertence produces or provides discovery of any CONFIDENTIAL DOCUMENTS, the party shall promptly give written notice to the receiving party that the documents are CONFIDENTIAL and should be treated in accordance with this PROTECTIVE ORDER.  The receiving party shall treat such documents as CONFIDENTIAL from the date that such notice is received.

25.     In the case of any accidental or inadvertent disclosure of CONFIDENTIAL DOCUMENTS or any other disclosure not in accordance with this PROTECTIVE ORDER, counsel for the party responsible for the disclosure shall promptly notify counsel for the party to whom the CONFIDENTIAL DOCUMENTS belong of the disclosure and make every effort to prevent further disclosure, including attempting to retrieve all copies of the CONFIDENTIAL DOCUMENTS from the recipients thereof, and attempting to secure the agreement of the recipients not to further disseminate the CONFIDENTIAL DOCUMENTS in any form.

26.     Inadvertent production of any document, material, or information that any party later claims should not have been produced because of a privilege, including but not limited to the attorney-client privilege, deliberative process privilege, law enforcement privilege, work product doctrine, or common interest doctrine will not be deemed to waive any privilege.  Any party may request the return of any inadvertently produced privileged document, material or information by identifying the document inadvertently produced and stating the basis for withholding such document from production.  If a party requests the return, pursuant to this paragraph, of any inadvertently produced privileged document then in the custody of another party, the possessing party shall within three (3) business days return to the requesting Party the inadvertently produced privileged item (including all attachments to that item) in its entirety (and all copies thereof), and shall expunge from any other document or material information

8

reflecting the contents of the inadvertently produced privileged item.  If the party returning such

item seeks an order to compel production of such documents, such party shall not assert as a

ground for entering such an order the fact (or circumstances) of the inadvertent production.

   27.  All parties and other persons who receive CONFIDENTIAL DOCUMENTS shall

be under a continuing duty not to disclose such documents, except as permitted by this

PROTECTIVE ORDER, and this duty shall continue in full force and effect after the completion

of this litigation.

   IT IS SO ORDERED.

   Dated this 28th day of July, 2008.

              _____

              C. Richard Miserendino
              Administrative Law Judge

**APPENDIX A**

**FEDERAL DEPOSIT INSURANCE CORPORATION**

**WASHINGTON, D.C.**

_____

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | DECLARATION |
| COMPUCREDIT CORPORATION | ) | ACKNOWLEDGING |
| ATLANTA, GEORGIA | ) | PROTECTIVE ORDER |
| | ) | |
| An Institution-Affiliated Party of: | ) | FDIC-08-139b |
| | ) | FDIC-08-140k |
| COLUMBUS BANK AND TRUST COMPANY | ) | |
| COLUMBUS, GEORGIA | ) | |
| | ) | |
| (Insured State Nonmember Bank) | ) | |

_____

I, _____, declare as follows:

1.      [I am assisting **[name of party]** in the preparation, pre-trial and trial of this proceeding.]  or [I am a potential witness in this proceeding.]

2.      I acknowledge that I will be receiving confidential information and/or reviewing confidential documents subject to a PROTECTIVE ORDER dated July____, 2008.  I have read and understand the PROTECTIVE ORDER and acknowledge that the PROTECTIVE ORDER is binding upon me.

3.      I agree not to disclose any such confidential information, except under the limited conditions permitted in the PROTECTIVE ORDER.

4.      I understand that I may be subject to sanctions if I make any unauthorized disclosure of such confidential information.

I declare under penalty of perjury that the foregoing is true and correct and that I am executing this declaration in _____, _____, on the ___ day of _____, 2008.

_____

# CERTIFICATE OF SERVICE

The undersigned certifies that on July 28, 2008, the foregoing Protective Order was served by electronic mail upon the following persons:

Valerie J. Best, Assistant Executive Secretary
A.T. Dill, Esq., Heather Walters, Esq.; Andrea Fulton Toliver, Esq., Marguerite Sagatelian, Esq.
Federal Deposit Insurance Corporation
550 17th St., NW
Washington, DC 20429
chammond@fdic.gov ; vbest@fdic.gov; adill@fdic.gov; hewalters@fdic.gov; atoliver@fdic.gov
msagatelian@fdic.gov

Pat Cipollone, Esq., Michael Williams, Esq., Rebecca Ruby Anzidei, Esq., Daniel T. Donovan
Kirkland Ellis LLP
655 Fifteenth Street
Washington, DC  20005
pcipollone@kirkland.com; mwilliams@kirkland.com; ranzidei@kirkland.com;
ddonovan@kirkland.com

Brian McCormally, Esq., David Bergman, Esq., Robert Clark, Esq., Erica Taylor McKinley, Esq.
Jeremy W. Hochberg, Esq.
Arnold & Porter LLP
555 12th Street NW
Washington, DC  20004
Brian.mccormally@aporter.com; David.bergman@aporter.com; Robert.clark@aporter.com;
Erica.mckinley@aporter.com; Jeremy.hochberg@aporter.com

_____

Gerald J. Langan
Office of Financial Institution Adjudication
3501 N. Fairfax Drive Suite D8116
Arlington, Virginia 22226-3500
ofia@fdic.gov (e-mail), (703) 562-2762 (telephone)
(703) 562-2775 (fax)

**Federal Deposit Insurance Corporation**
Boston Area Office - Legal Division                                    Tel. (781) 794-5500
15 Braintree Hill Office Park, Braintree, MA  02184                    Fax (781) 794-5600

July 23, 2008

<u>VIA E-MAIL ATTACHMENT</u>

Michael F. Williams, Esq.
Kirkland & Ellis LLP
655  Fifteenth Street, N.W.
Washington, DC 20005

   Re: *FTC v. CompuCredit, et al.*, 1:08-cv-1976 (BBM)
      <u>Subpoena Duces Tecum</u>

Dear Michael:

  This letter is to confirm our telephonic discussions of July 21 and 22, 2008 with respect to the Subpoena Duces Tecum (Subpoena) issued by CompuCredit Corporation (CompuCredit) to the Federal Deposit Insurance Corporation (FDIC) on July 3, 2008.

  You indicated that CompuCredit's priorities for production included the document requests that relate to the following three areas:

  (1) FDIC and the FTC jurisdiction over CompuCredit and financial institutions for Section 5 violations.  We agreed to reasonably search for documents relating to the FDIC's position, if any, on FTC jurisdiction.  We also agreed to search for background documents related to the FDIC's public policy statements on these jurisdictional issues.

  (2) The FDIC's Consumer Response Center and consumer complaints.  We agreed to produce relevant consumer complaint files, and search for any relevant complaints that might be identified in the supervisory files of the three banks and CompuCredit.

  (3) Columbus Bank and Trust and CompuCredit examinations and visitation work papers and materials.  We agreed to produce relevant examination and visitation reports, and associated work papers.  We also agreed to inquire about examiner files that may exist separate from the work papers.

  You requested specific location identification of publicly available documents and we agreed to provide that identification.  Without waiving any of the FDIC's objections as stated in our letter dated July 17, 2008, will begin production of documents according to your priorities

Michael F. Williams, Esq.
July 23, 2008
Page 2 of 2

once an appropriate protective order is in place, subject to any applicable privileges and appropriate relevancy restrictions.

Given the large production required by your subpoena, as well as the current lack of an appropriate protective order, we do not anticipate completing production by July 28, 2008, as requested by the subpoena. As we discussed, we will give you an estimated time frame to begin a rolling production of the priority documents during our scheduled call on Thursday, July 24, 2008 at 10:00 a.m. We appreciate your cooperation in this matter.

If you have any questions concerning the foregoing, please feel free to contact me at 781-794-5620 or Tom Feeney at 202-898-3690.

Sincerely,

Marguerite Sagatelian
Enforcement Counsel
msagatelian@fdic.gov

cc:     Pat Cipollone, Esq.
        Robert Clark, Esq.
        Thomas J. Feeney, Supervisory Counsel
        Heather Walters, Enforcement Counsel

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

655 Fifteenth Street, N.W.
Washington, D.C. 20005

Michael F. Williams
To Call Writer Directly:
(202) 879-5123
mwilliams@kirkland.com

(202) 879-5000

www.kirkland.com

Facsimile:
(202) 879-5200

July 24, 2008

**BY ELECTRONIC MAIL**

Marguerite Sagatelian
Senior Counsel
Federal Deposit Insurance Corporation
550 17th Street, N.W.
Washington, DC 20249

Re:    *FTC v. CompuCredit Corp., et al., No. 08-1976 (N.D. Ga.)*

Dear Marguerite:

I am writing to follow up on our conference call of earlier this morning.

*1. Request for a Date Certain to Begin Producing Documents.* During our call, we asked when we could expect the FDIC to begin producing documents responsive to CompuCredit's subpoena. Although you represented that the FDIC was looking into what documents it has, you would not provide us a date certain by which the FDIC will begin production. We again request a date certain that the FDIC will begin to produce documents responsive to the subpoena. As you are aware, the discovery schedule in this matter provides for the close of all discovery—document, depositions, and expert discovery—by December 15, 2008. Accordingly, we need the responsive documents produced immediately.

We want to emphasize that we identified certain categories of documents as priority categories in an effort to facilitate the FDIC's response to the subpoena. Our identification of priorities should not be interpreted as an agreement to narrow or to limit CompuCredit's requests. Rather, CompuCredit is requesting that the FDIC provide all non-privileged, responsive documents as soon as practicable. As I mentioned, we also ask that you not place any implicit or unspoken limits on the FDIC's document production—*e.g.*, withholding categories of exam-related documents based on your view that they may not be relevant to this case.

*2. The FDIC's Objections to the Document Subpoena.* During the call, you stated that the FDIC objects to the subpoena to the extent that it would require the production of documents that would not be available to CompuCredit in the FDIC's administrative proceeding and to the extent that CompuCredit's requests do not satisfy the procedural burdens of 12 C.F.R. § 309.5. As we explained, under applicable case law and the Federal Rules of Civil Procedure, we are under no obligation to justify our requests under the FDIC's "material relevancy" standard. The

Chicago        Hong Kong        London        Los Angeles        Munich        New York        San Francisco

Stephen M. Colangelo          **KIRKLAND & ELLIS LLP**
July 24, 2008
Page 2

FDIC's internal procedures are simply not applicable in this federal court proceeding.  In the interest of clarifying our areas of disagreement and resolving your objections, we asked that you provide written objections to our requests, and you agreed to provide those objections today.

    **3. *The FDIC's Objections to Depositions.***  During the call, you also indicated that the FDIC would not agree to produce for depositions two of the Consumer Response Center employees whom we have noticed, and that the FDIC would not agree to produce a witness or witnesses to testify about Topics Nos. 3, 4, 5, 6, or 9 of our Rule 30(b)(6) deposition.  Your stated basis for not producing the witnesses was that the testimony would not be relevant in this case.  As with the FDIC's objections to the document subpoena, you agreed to set forth your objections in writing, so that we may resolve the dispute with the Court if necessary.

    We look forward to receiving your written objections and to working with you to develop search terms for electronic documents.  Please do not hesitate to contact me if you have questions or comments in the meantime.

Very truly yours,

Michael F. Williams /adn

Michael F. Williams

Enclosures

cc:   Thomas Feeney
      Heather Walters
      Daniel Donovan
      Robert Clark

**FDIC**

**Federal Deposit Insurance Corporation**
550 17th Street, N.W.                                    Legal Division
Washington, DC 20429                                    Enforcement Unit

July 25, 2008

<u>Via e-mail attachment</u>
Michael F. Williams, Esq.
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, DC 20005

     Re:    *FTC v. CompuCredit, et al.*, 1:08-cv-1976 (BBM)

Dear Michael:

     This letter is a follow up to our telephonic discussions of the week of July 21, 2008 and your letter to Marguerite Sagatelian dated July 24, 2008.

     Regarding document production, as we previously stated, we will begin document production when an appropriate protective order is in place. To our knowledge, that has not yet occurred. Once the protective order is in place and without waiving any objections, we will begin producing documents according to the priorities that you previously identified.

     We reserve all objections to the production of documents, or categories of documents, to be identified later. Regarding our objections to the document subpoena, we are conferring with our Litigation Division and will provide you with specific objections to the individual requests as soon as possible.

     With respect to the noticed depositions of Janet Kincaid, Karen Porter, and Emi Prindle, we object to the date, time, and location, as indicated of the Notices of Deposition. We will produce all three witnesses for deposition in Washington, D.C. on dates to be agreed upon. As we previously stated, we request that Janet Kincaid be deposed first to avoid any unnecessary inconvenience to Ms. Porter and Ms. Prindle; if Ms. Kincaid provides the information you seek, we would like to avoid any unnecessarily duplicative testimony. We reserve all objections to questions these witnesses may be asked, as well as objections to production of other witnesses.

     Regarding the 30(b)(6) notice, we designate Janet Kincaid as the individual most knowledgeable regarding topic two. We request that Ms. Kincaid's 30(b)(6) testimony be taken concurrently with her individual deposition to avoid any duplication of testimony. Given the broad topic designations, we are conferring to determine appropriate designees for the other topics. We are also conferring with our Litigation Division regarding potential objections to the requested testimony and we reserve all objections to questions that may be asked of Ms. Kincaid or any other 30(b)(6) witness designated in the future. We will provide you with additional details as soon as possible.

Michael F. McEwen, Esq.
July 25, 2008

   If you have any questions concerning the foregoing, please feel free to contact me at 202-898-6729 or Tom Feeney at 202-898-3690.

                              Sincerely,

                              Heather Walters

                              Heather Walters
                              Counsel
                              HeWalters@fdic.gov


cc:    Pat A. Cipollone, Esq.
       Robert A. Clark, Esq.
       Charles L. Cope, Senior Counsel
       Thomas Feeney, Supervisory Counsel
       Marguerite Sagatelian, Counsel



**FDIC**
**Federal Deposit Insurance Corporation**
550 17th Street, N.W.
Washington, DC 20429

Legal Division
Enforcement Unit

July 31, 2008

<u>Via e-mail attachment</u>
Michael F. Williams, Esq.
Kirkland & Ellis LLP
655  Fifteenth Street, N.W.
Washington, DC 20005

     Re:    *FTC v. CompuCredit, et al.*, 1:08-cv-1976 (BBM)

Dear Michael:

     This letter is in response to a telephonic message from Dan Donovan on July 29, 2008 and your letter of the same date.

     Regarding document production, as we previously stated, we will begin document production when an appropriate protective order is in place.  As you note, the administrative law judge issued a protective order in the administrative proceedings.   Your subpoena, however, was issued in the FTC's federal court proceeding and we are informed that, as of today, no protective order had been issued in that case.

     Your artificial deadline of July 24, 2008 for specific objections, in writing, to the document requests is not well taken.  We complied with the Federal Rules of Civil Procedure, which required us to file our objections to the document requests by July 17, 2008 and we complied with those requirements.  We also requested in multiple telephone calls that you explain the relevance of a number of the requests so that we can understand what you need and possibly reach a mutual accommodation that avoids imposing undue burden or expense on the FDIC as a third-party.

     With respect to the noticed depositions of Janet Kincaid, Karen Porter, and Emi Prindle, we appreciate your agreement to depose these individuals in the Washington, D.C. area, and prefer that they be deposed at the FDIC's offices in Virginia Square.  We also appreciate your willingness to be flexible in scheduling these depositions and are consulting with the deponents regarding their availability on your suggested dates.

     We are currently gathering documents for production according to your priorities and without waiving any objections, will begin producing documents after the proper protective order is entered in the FTC litigation.

Michael F. Williams, Esq.
July 31, 2008

We will provide you with additional details as soon as possible.  If  you have any questions concerning the foregoing, please feel free to contact me at 202-898-6729 or Tom Feeney at 202-898-3690.

Sincerely,

Heather Walters
Counsel
HeWalters@fdic.gov

cc:    Pat A. Cipollone, Esq.
       Robert A. Clark, Esq.
       Charles L. Cope, Senior Counsel
       Thomas Feeney, Supervisory Counsel
       Marguerite Sagatelian, Counsel

FILED IN CHAMBERS
U.S.D.C. Atlanta

**AUG 0 6 2008**

JAMES N. HATTEN, Clerk
By  pmw
                    Deputy Clerk

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

|  |  |
|---|---|
| **FEDERAL TRADE COMMISSION,** | ) |
| Plaintiff, | ) |
| v. | ) Civil Action |
|  | ) No. 1:08-CV-01976-BBM-RGV |
| **COMPUCREDIT CORP.,** *et al.*, | ) |
| Defendants. | ) |

## STIPULATED PROTECTIVE ORDER REGARDING CONFIDENTIAL TREATMENT OF DOCUMENTS

To expedite the flow of discovery material, facilitate the prompt resolution of disputes over confidentiality, ensure that protection is afforded only to material so designated, and protect personally identifiable and private information, Plaintiff Federal Trade Commission ("FTC") and Defendants CompuCredit Corporation and Jefferson Capital Systems, LLC hereby stipulate to and request that the Court enter an Order requiring that:

1. Documents, interrogatory answers, written responses to requests for production, responses to requests for admission, deposition testimony, deposition

1

exhibits, recorded or graphic matter, and other materials, tangible objects, and

information (hereinafter "MATERIALS") that contain trade secret or other

confidential research, development, technical, commercial, financial, or private

information, PERSONALLY IDENTIFIABLE INFORMATION (defined in this

paragraph, below), or exempt information under 12 C.F.R. Part 309 produced,

provided, or filed in this action by any party or non-party, including but not limited

to such MATERIALS produced in response to any compulsory process served

before the entry date of this Order may be designated CONFIDENTIAL by any

party or non-party, and thereby made subject to the provisions of this Order.

Public information independently discovered by a receiving party is not subject to

the provisions of this Order.  PERSONALLY IDENTIFIABLE INFORMATION

includes an individual's social security number, or an individual's name or address

or phone number in combination with one or more of the following: date of birth;

driver's license number or other state identification number, or a foreign country

equivalent; passport number; financial account number; or credit card or debit card

number.  For purposes of this Order, PERSONALLY IDENTIFIABLE

INFORMATION also includes medical records and other individually identifiable

health information relating to the past, present, or future physical or mental health

2

or condition of an individual, and to the provision of or payment for health care to

an individual.

2.    A designation that MATERIALS are CONFIDENTIAL shall

constitute a representation by the designating party, in good faith and after careful

determination, that the MATERIALS so designated are eligible for such

designation pursuant to Paragraph 1.

3.    PERSONALLY IDENTIFIABLE INFORMATION shall be afforded

all the protections of this Order afforded to other CONFIDENTIAL MATERIALS,

but also shall be secured by any receiving party in such a manner as to minimize

the possibility of unintentional disclosure, including the physical storage thereof in

a secure area or law office, the electronic storage thereof on a password-protected

computer or system which may be accessed only by persons qualified to have

access to the PERSONALLY IDENTIFIABLE INFORMATION pursuant to the

terms of this Order, and the shipment thereof only to other qualified persons by a

trackable method with restricted delivery to such qualified persons.

4.    During the course of a deposition or as a result of an interrogatory, a

request for production, or a request for admission, if a response calls for the

disclosure of CONFIDENTIAL MATERIALS, to the extent possible, the

responding party should so designate such MATERIALS as CONFIDENTIAL in

3

responding to the questions, and if the CONFIDENTIAL MATERIALS are

elicited during a deposition, the party shall instruct the court reporter that the

answers to the questions, along with any questions that incorporate

CONFIDENTIAL MATERIALS, should be marked "CONFIDENTIAL" in the

transcript. Any party or non-party who signs onto this Order may, on the record of

any deposition or by written notice to counsel for all parties no later than thirty

days after the deposition transcript is first made available to that party, designate

portions thereof as CONFIDENTIAL under the terms of this Order. Until the end

of such thirty-day period, the deposition transcript will be deemed to be designated

CONFIDENTIAL in its entirety under the terms of this Order. Thereafter, only

those portions of the deposition transcript designated CONFIDENTIAL shall be so

treated, except that, to the extent possible, all copies of deposition transcripts that

contain CONFIDENTIAL MATERIALS shall be prominently marked

"CONFIDENTIAL" on the cover thereof. This designation may be accomplished

either (a) by marking "CONFIDENTIAL" every page of the transcript that

contains CONFIDENTIAL MATERIALS or (b) by notifying all parties of the

transcript page and line numbers of the pages deemed to be CONFIDENTIAL, and

marking the first and last such pages of such ranges as "CONFIDENTIAL –

START" and "CONFIDENTIAL – END," respectively. Transcript pages

4

designated CONFIDENTIAL by either method of designation shall be entitled to the same protections under this Order.

5.    With respect to all MATERIALS provided for inspection by a party's counsel, all CONFIDENTIAL MATERIALS shall be stamped "CONFIDENTIAL" by the party desiring such designation, or otherwise designated by such party in writing, within thirty days of production. Until the end of such thirty-day period, the document production will be deemed to be designated CONFIDENTIAL in its entirety under the terms of this Order. A designation of CONFIDENTIAL by stamping or labeling need not be made until after counsel for the inspecting party has inspected the MATERIALS and selected MATERIALS to be copied. Making MATERIALS available for inspection shall not constitute a waiver of any claim to designate such MATERIALS as CONFIDENTIAL, and all MATERIALS provided for inspection by a party's counsel shall be treated as though designated CONFIDENTIAL at the time of inspection.

6.    Any party, within thirty days of the party's receipt of any MATERIALS in this matter from any non-party in response to compulsory process, may designate as CONFIDENTIAL under the terms of this Order any MATERIALS that are produced in response to compulsory process served on a

non-party. This designation may be accomplished either (a) by marking every

page of CONFIDENTIAL MATERIALS "CONFIDENTIAL," or (b) by notifying

all parties of the Bates ranges of MATERIALS deemed CONFIDENTIAL, and

marking the first and last such pages of such ranges as "CONFIDENTIAL –

START" and "CONFIDENTIAL – END," respectively. MATERIALS designated

CONFIDENTIAL by either method of designation shall be entitled to the same

protections under this Order. Prior to the expiration of the thirty-day period

following the respective parties' receipt of such MATERIALS, any such

MATERIALS produced will be deemed to be CONFIDENTIAL in their entirety

under the terms of this Order. Thereafter, only those portions of the MATERIALS

designated CONFIDENTIAL through either of the above-described methods shall

be so treated.

      7.     CONFIDENTIAL MATERIALS, including any writing or

communication reproducing, paraphrasing, or otherwise disclosing such

CONFIDENTIAL MATERIALS, shall not be used for any purpose by the

receiving party except for purposes in connection with this litigation or RELATED

LITIGATION. RELATED LITIGATION shall include In the Matter of First Bank

and Trust and CompuCredit Corporation, FDIC 07-228b, FDIC 07-260k; In the

Matter of First Bank of Delaware and CompuCredit Corporation, FDIC 07-256b,

FDIC 07-257k; and In the Matter of CompuCredit Corporation, FDIC 08-139b,

FDIC08-140k.  Notwithstanding the foregoing, nothing in this Order shall impose

any restrictions on the use or disclosure of CONFIDENTIAL MATERIALS by the

FTC as provided by:  (1) the FTC's Rules of Practice and any cases construing

them; (2) Sections 6(f) and 21 of the Federal Trade Commission Act and any cases

construing them; and (3) any other legal obligation imposed upon the FTC;

provided that the FTC shall, unless otherwise prohibited by law, regulation, or

lawful court order, provide CompuCredit and/or Jefferson Capital, as the case may

be, with at least 10 days notice of the nature of any such use or disclosure of

CONFIDENTIAL MATERIALS produced by such company prior to such a use or

disclosure.

     8.     CONFIDENTIAL MATERIALS, including any writing or

communication reproducing, paraphrasing, or otherwise disclosing such

CONFIDENTIAL MATERIALS, shall not be disclosed to any person by the

receiving party except to the following persons:

     (a)     Counsel for the Parties in this action.  Legal assistants,

paralegals, secretarial and clerical employees, and outside copy services, litigation

consulting services, document management services, and graphic services that are

assisting counsel in the prosecution, defense, and/or appeal of this Action are also included as "counsel" for the purposes of this Order;

(b)    Independent experts, consultants and/or investigators retained, employed, or informally consulted by counsel in connection with the prosecution, defense, and/or appeal of this Action, including their legal assistants, paralegals, and secretarial or clerical employees that are assisting in the prosecution, defense, and/or appeal of this Action, provided that each such person executes, prior to receiving access to CONFIDENTIAL MATERIAL, an undertaking in the form attached as Exhibit A to this Order. A Party who retains a consulting expert shall be responsible for ensuring that such consulting expert, including legal assistants, paralegals, secretarial or clerical employees of the consulting expert, sign and execute the form attached as Exhibit A to this Order. The Party retaining the consulting expert shall be responsible for maintaining the form attached as Exhibit A to this Order after it has been signed by the consulting expert and the form shall not be discoverable by the opposing Party or Parties. If a consulting expert is designated by a Party as a testifying expert or as an individual whose work has been reviewed by a testifying expert, the executed Exhibit A for those individuals will become discoverable. The form attached as Exhibit A to this Order shall not be admissible into the trial of this Action;

8

(c)    The Parties, solely for the purpose of prosecuting, defending, and/or appealing this Action or RELATED LITIGATION.  For the purpose of this subparagraph, the Parties shall include:

(i)    The Defendants in this action, including the executives or other personnel of the Defendants who are participants with respect to policy decisions for the trial or pretrial preparations with reference to this action and any personnel having a good-faith, reasonable need for obtaining access to the CONFIDENTIAL MATERIALS;

(ii)    FTC Commissioners and other employees of the FTC (including consultants not covered under Subparagraph 8(b) above), the parties' respective counsel of record in this action, including the associates and paralegal, secretarial, clerical, and other regular and temporary employees of such counsel assisting such counsel and including employees of any firm retained to reproduce or store the CONFIDENTIAL MATERIALS for use in accordance with this Order;

(d)    Any person who prepared or originated the CONFIDENTIAL MATERIALS, who is indicated on the face of the CONFIDENTIAL MATERIALS as a recipient of a copy thereof, who otherwise legitimately received a copy of the CONFIDENTIAL MATERIALS other than through a document production in this litigation, or who is a witness or witness's counsel at deposition

9

or trial where the CONFIDENTIAL MATERIALS are reasonably related to the

testimony of such witness, and court reporters and persons preparing transcripts of

testimony.

   (e) The Court and related officials involved in this litigation or any

other proceeding in which the CONFIDENTIAL MATERIALS are used, including

judges, magistrates, commissioners, referees, jurors, and other personnel of the

Court; provided, however, that any MATERIALS designated CONFIDENTIAL

and lodged or filed with the Court are filed in accordance with the procedures for

filing under seal as described in Paragraph 11 below.

   (f) Persons with prior knowledge of the CONFIDENTIAL

MATERIAL, provided that such knowledge did not result from a breach of duty,

obligation, or law;

   (g) Any other persons agreed to in writing by the Parties; and

   (h) Any person designated by the Court in the interest of justice,

upon such terms as the Court deems proper.

   9. Prior to disclosing CONFIDENTIAL MATERIALS to any person

listed in Subparagraphs 8(b) or 8(d), the receiving party shall:

   (a) provide such person with a copy of this Order; and

      (b)    obtain from such person a signed statement in the form attached hereto as Exhibit A. Such statement shall be retained by counsel for the party and need not be filed with the Court or served upon opposing counsel unless requested for good cause or ordered by the Court.

     10.   Any person listed in Subparagraphs 8(a) through 8(h) who receives CONFIDENTIAL MATERIALS shall:

      (a)    read this Order;

      (b)    use such CONFIDENTIAL MATERIALS only for purposes permitted by this Order; and

      (c)    not disclose or discuss such CONFIDENTIAL MATERIALS other than as permitted by this Order.

     11.   All CONFIDENTIAL MATERIALS that are lodged or filed with the Court, including any pleading or other document reproducing, paraphrasing, or otherwise disclosing such CONFIDENTIAL MATERIALS, shall be lodged or filed pursuant to this Order in a sealed envelope or other appropriate sealed container marked in the manner required by the Court for lodging and filing such MATERIALS under seal.

11

12.    Nothing contained herein shall be construed to prejudice any party's right to use any CONFIDENTIAL MATERIALS or other information for any purpose in this litigation.

13.    Nothing contained herein shall be construed to affect in any way the admissibility of any document, testimony, or other evidence at trial.  This Order has no effect upon, and its scope shall not extend to, any party's use of its own discovery MATERIALS.

14.    Any party who has designated any MATERIALS as CONFIDENTIAL pursuant to this Order may consent to the removal of such designation by so notifying counsel for the other parties in writing.

15.    Any party may challenge a designation of CONFIDENTIAL and request removal of the MATERIALS or their designation as CONFIDENTIAL as follows:

(a)    The party seeking such removal shall give the party who designated the MATERIALS as CONFIDENTIAL written notice thereof specifying the MATERIALS as to which such removal is sought and the reason for the request.

(b)    If the parties cannot reach agreement concerning the matter within ten days after such notice, then the party requesting the removal of such

MATERIALS or their designation as CONFIDENTIAL may file and serve a motion for an order of the Court directing that the MATERIALS or their designation as CONFIDENTIAL be removed.

(c)    For CONFIDENTIAL MATERIALS other than PERSONALLY IDENTIFIABLE INFORMATION, the party desiring to maintain their designation as CONFIDENTIAL shall have the burden of establishing grounds for such treatment. The burden of establishing that any PERSONALLY IDENTIFIABLE INFORMATION should not be considered CONFIDENTIAL shall be upon the party seeking to remove the designation.

16.    Neither the taking of any action in accordance with the provisions of this Order, nor the failure to object thereto shall be construed as a waiver of any claim or defense in this action. Moreover, the failure to designate MATERIALS in accordance with this Order and the failure to object to a designation at a given time shall not preclude the filing of a motion at a later date seeking to impose such designation or challenging the propriety thereof. The entry of this Order shall neither be construed as a waiver of any right to object to the furnishing of MATERIALS in response to discovery nor relieve any party of the obligation of producing MATERIALS in the course of discovery.

13

17.    If a party through inadvertence produces or provides discovery of any MATERIALS without designating them as CONFIDENTIAL as provided in this Order, the party shall promptly give written notice to the receiving party that the MATERIALS are CONFIDENTIAL and should be treated in accordance with this Order.  The receiving party shall treat such MATERIALS as CONFIDENTIAL from the date that such notice is received.  Disclosure of such MATERIALS prior to receipt of such notice to persons not authorized to receive CONFIDENTIAL MATERIALS shall not be deemed a violation of this Order; however, those persons to whom disclosure was made are to be advised that the MATERIALS disclosed are CONFIDENTIAL and must be treated in accordance with this Order.

18.    In the case of any accidental or inadvertent disclosure of CONFIDENTIAL MATERIALS or any other disclosure not in accordance with this Order, counsel for the party responsible for the disclosure shall promptly notify counsel for the party who designated the MATERIALS as CONFIDENTIAL (or the individual whose PERSONALLY IDENTIFIABLE INFORMATION was disclosed) of the disclosure and make every effort to prevent further disclosure, including attempting to retrieve all copies of the CONFIDENTIAL MATERIALS from the recipients thereof, and attempting to

14

secure the agreement of the recipients not to further disseminate the

CONFIDENTIAL MATERIALS in any form.

19.    Inadvertent production of any document, material, or information that

a Party later claims should not have been produced because of a privilege,

including but not limited to the attorney-client privilege, deliberative process

privilege, law enforcement privilege, work product doctrine, or common interest

doctrine will not be deemed to waive any privilege.  A Party or non-Party may

request the return of any inadvertently produced privileged document, material or

information by identifying the document inadvertently produced and stating the

basis for withholding such document from production.  If a Party requests the

return, pursuant to this paragraph, of any inadvertently produced privileged

document then in the custody of another Party, the possessing Party shall within

three (3) business days return to the requesting Party the inadvertently produced

privileged item (including all attachments to that item) in its entirety (and all

copies thereof), and shall expunge from any other document or material

information reflecting the contents of the inadvertently produced privileged item.

The Party returning such item may then move the Court for an order compelling

production of the material, but said Party shall not assert as a ground for entering

such an order the fact (or circumstances) of the inadvertent production.

20.    Neither the taking of any action in accordance with the provisions of this Order, nor the failure to object hereto, shall be construed as a waiver of any claim or defense in this Action. This Order shall not be construed as a waiver of any right to object to the furnishing of requested information in response to discovery or that any particular discovery is appropriate and, except as expressly provided, shall not relieve any Party or witness of the obligation to produce information properly sought in the course of discovery. Nothing herein shall be construed to affect in any way the admissibility of any document, testimony, or other evidence at trial of this Action. Nothing contained in this Order or any declaration of confidentiality or restriction hereunder shall be used or characterized by any Party, or its employees, agents, or retained experts, as an "admission" by a Party opponent or an admission or other evidence that materials produced in discovery are or are not, in fact, trade secrets, or other confidential or proprietary business, technical, financial, or personal information, or are entitled to any legal protection. The failure of a Party to object to or to challenge a designation of information as Confidential shall not constitute an admission that the materials so designated are, in fact, trade secrets, or other confidential or proprietary business, technical, or financial information, or are entitled to any legal protection. The failure of a Party to object to or to challenge a designation of information as

16

Confidential upon initial receipt of this material shall not constitute or be construed

as a waiver of that Party's right subsequently to object to or to challenge such

designations at any later time.

21.     At the time that any consultant, expert, or other person retained to

assist counsel in this action concludes participation in this action, such person shall

return to counsel all copies of MATERIALS or portions thereof designated

CONFIDENTIAL that are in the possession of such person, together with notes,

memoranda, or other papers reproducing, paraphrasing, or otherwise disclosing

CONFIDENTIAL MATERIALS, or certify as to their destruction.  Furthermore,

within thirty days after the completion of this litigation all CONFIDENTIAL

MATERIALS, including any writing or communication reproducing, paraphrasing,

or otherwise disclosing such CONFIDENTIAL MATERIALS, shall be collected

by counsel for the receiving party and either destroyed or returned to the party or

non-party who produced, provided, or filed the MATERIALS; provided, however,

that attorney work product or pleadings reproducing, paraphrasing, or otherwise

disclosing CONFIDENTIAL MATERIALS may be retained in counsel's files

subject to the other paragraphs of this Order, providing that such

CONFIDENTIAL MATERIALS shall not be used for any purpose outside of those

permitted by this Order.  For purposes of this Order, this action shall be considered

completed when the entire proceeding has been resolved and any related orders have become final and non-appealable.

     22.    All parties and other persons who receive CONFIDENTIAL MATERIALS shall be under a continuing duty not to disclose such MATERIALS, except as permitted in this Order, and this duty shall continue in full force and effect after the completion of this litigation.

     23.    In the event additional persons or entities become parties to this litigation, they shall be bound by this Order unless and until a different Protective Order is entered with respect to such additional parties.

**IT IS SO ORDERED THIS** _6th_ **DAY OF** _August_ , 2008.

_Russell G. Vineyard_

**RUSSELL G. VINEYARD**
**UNITED STATES MAGISTRATE JUDGE**

**STIPULATED AND AGREED TO BY:**


 /s/ Chris M. Couillou
MARK L. GLASSMAN
GREGORY A. ASHE
KATHERINE M. WORTHMAN
DAVID WIESE
LEAH FRAZIER
Federal Trade Commission
600 Pennsylvania Ave NW
Mail Stop NJ-3158
Washington, DC  20580
Telephone: 202-326-2826
Facsimile: 202-326-3768

CHRIS M. COUILLOU (Bar No. 190062)
Federal Trade Commission
Southeast Region
225 Peachtree St NE, Ste 1500
Atlanta, GA 30303
Telephone: 404-656-1353
Facsimile: 404-656-1379

*Attorneys for Federal Trade Commission*

**EXHIBIT A**

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |
|---|---|
| **FEDERAL TRADE COMMISSION,** | ) |
| Plaintiff, | ) |
| v. | ) Civil Action<br>) No. 1:08-CV-01976-BBM-RGV |
| **COMPUCREDIT CORP.,** *et al.,* | ) |
| Defendants. | ) |

**ACKNOWLEDGMENT OF STIPULATED PROTECTIVE ORDER
REGARDING CONFIDENTIAL TREATMENT OF DOCUMENTS
PRODUCED IN DISCOVERY**

This acknowledges that I have read the Protective Order entered in the

above-captioned case on [fill in the date the Court entered the Protective Order]

and I agree to be bound by the terms of that Protective Order.

As a condition precedent to my receipt or review of any MATERIALS

designated CONFIDENTIAL pursuant to that Protective Order, I hereby agree that

the Protective Order shall be deemed to be directed to and shall include me, and I shall observe and comply with all of its provisions.

I further understand and agree that I am not permitted to use, and I shall not use, CONFIDENTIAL MATERIALS for any purpose other than those permitted under this Order.


Date: _____    Signature:

_____

Printed Name: _____

# Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas    New York, NY 10036-6710    212.336.2000    fax 212.336.2222    www.pbwt.com

August 7, 2008

Karla G. Sanchez
Partner
(212) 336-2785
Direct Fax  (212) 336-2788
kgsanchez@pbwt.com

**By Electronic Mail**
Michael F. Williams, Esq.
Daniel T. Donovan, Esq.
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Suite 1200
Washington, DC  20005

Re:    FTC v. CompuCredit Corp., et al.
       Case Number:  1:08-cv-1976 (BBM)

Dear Dan and Michael:

We have been retained by the Federal Deposit Insurance Corporation ("FDIC") in connection with the above-referenced matter.  In that role we will be coordinating the FDIC's response to the third-party discovery requests you have directed at it on behalf of your client CompuCredit Corporation ("CompuCredit").  Accordingly, please direct a copy of all future correspondence regarding these and other discovery demands in this matter to my attention.

As to the requests made, it is our understanding that to date CompuCredit has served on the FDIC a single document subpoena, dated July 3, 2008, and a single deposition subpoena for a corporate representative, dated July 18, 2008.  The parties agreed to adjourn the noticed deposition date of corporate representative deposition, and a new date has not been set.  In addition, we understand that CompuCredit has forwarded three notices for the individual depositions of FDIC personnel, each dated July 18, 2008, but did not issue subpoenas therewith.  We also understand that CompuCredit did not provide the Federal Trade Commission ("FTC") with notice of any of the foregoing deposition demands.  Please advise us whether you view these understandings to be inaccurate.

We would like to schedule a time to discuss CompuCredit's requests and the status of discussions concerning those requests.  As indicated in earlier correspondence, the FDIC will provide specific objections to CompuCredit's individual document demands and the noticed topics of the corporate representative deposition, which we expect to serve by Monday.  We propose therefore that a call be scheduled for Wednesday, August 13, 2008, so that we may review each of CompuCredit's demands in the context of the specific objections.  In the meantime, we reserve the right to move to quash or for a protective order with respect to all aspects of the demands.

Kirkland & Ellis
August 7, 2008
Page 2

On the call next week, in addition to the discovery requests, we would like to address the protective order that has been so ordered in the federal litigation. It does not address whether and to what extent documentation and information produced in this matter may be used in the administrative actions pending between the parties. We propose amending or supplementing the order to explicitly state that production in this matter shall not be construed to affect in any way the admissibility of the discovery during the administrative proceedings.

Finally, with respect to the contemplated depositions of the individual FDIC personnel, we request that CompuCredit properly notice and issue subpoenas. We are authorized to accept service, as well as the required fees, on the FDIC's behalf.

We look forward to working with you on these matters. I am generally available to discuss these issues in advance of next week's call.

Sincerely yours,

Karla G. Sanchez

cc:    Thomas Feeney, Esq. (by email)

# Vickers, A. Leah (x2766)

| | |
|---|---|
| **From:** | Haas, Erik (x2117) |
| **Sent:** | Monday, August 25, 2008 11:43 AM |
| **To:** | Vickers, A. Leah (x2766) |
| **Subject:** | FW: Letter |
| **File:** | -1 |

**From:** Rebecca Anzidei [mailto:ranzidei@kirkland.com]
**Sent:** Monday, August 18, 2008 9:39 AM
**To:** Haas, Erik (x2117)
**Cc:** ddonovan@kirkland.com; MWilliams@kirkland.com; pcipollone@kirkland.com
**Subject:** RE: Letter

Erik,
    Yes, your description of the data that will be provided with productions is acceptable.

Thanks,

Rebecca

**Rebecca Ruby Anzidei, Esq. | KIRKLAND & ELLIS LLP**
655 FIFTEENTH STREET, N.W. | WASHINGTON, D.C. 20005
Direct (202) 879-5046 | FAX (202) 879-5200 | ranzidei@kirkland.com

| | |
|---|---|
| **"Haas, Erik (x2117)" <ehaas@pbwt.com>**<br><br>08/14/2008 04:15 PM | To "Haas, Erik (x2117)" <ehaas@pbwt.com>, "Rebecca Anzidei" <ranzidei@kirkland.com><br>cc pcipollone@kirkland.com, ddonovan@kirkland.com, "Michael Williams" <MWilliams@kirkland.com><br>Subject RE: Letter |

Rebecca,

To follow-up on the format, we are agreeable to your proposal to use "Tiffs with Concordance delimiters and an Opticon load file." To ensure we are on the same page as to what that means, following are the specifications provided by our tech department regarding that data that will be provided in connection with the productions:

1.          **Standard Group IV Black &White single page tiffs at a minimum of 300**

8/25/2008

dpi or in Color if specifically tagged.

**2.**                   Each image will have a unique file name based on the associated Bates number.

**3.**                   Image files will be segmented into directories not to exceed 1,000 files.

**4.**                   Accompanying image Opticon load file will be provided and formatted with a single row per TIFF image and the first page of a logical document should includes a "Y".

> Example:
> MSC000001,MSC001,D:\IMAGES\001\MSC000001.TIF,Y,,,3
> MSC000002,MSC001,D:\IMAGES\001\MSC000002.TIF,Y,,,,

**5.**                   Accompanying Concordance Delimited file will be provided and formatted as follows:

**a)**                   Fields (BegDoc, EndDoc, AttachmentRange) shall be Comma (020) (_) delimited.

**b)**                   String values within the fields shall be enclosed with Quote (254) (þ).

**c)**                   The first row shall contain the field headers.

**d)**                   Below the first row, there shall be exactly one row for each document with NewLine (174) ®.

**e)**                   Each row of data shall contain the same number of fields as the first row.

**f)**                   Multiple values within a single field shall be separated by Tilde (~).

**g)**                   Parent-child relationships (the association between an attachment and its parent document) should be indicated in the data.

**h)**                   BegDoc in the dat file and imagekey in the opticon file should match.

> Example:
> þBegDocþ_þEndDocþ_þNumPagesþ
> þMSC0001þ_þMSC0003þ_þ0003þ
> þMSC0004þ_þMSC0005þ_þ0002þ

**i)**                   Document level text files named the same as the BegDoc.

**j)**                   The OCR/extracted text files will be combined in a separate directory and not included with the image files.

**k)**     Cross reference files that contain the BegDoc and filepath to the text files will be provided.

---

**From:** Haas, Erik (x2117)
**Sent:** Wednesday, August 13, 2008 5:42 PM
**To:** 'Rebecca Anzidei'
**Cc:** pcipollone@kirkland.com; ddonovan@kirkland.com; Michael Williams
**Subject:** RE: Letter

Rebecca,

I'm not sure why the earlier email did not reach you. I replied to the email Karla forwarded and did not receive a rejection notice. In any event, I'm glad your colleagues caught it.

8/25/2008

We still are not on the same page with respect to the protective order. As we see it, any disclosures the FDIC makes in the FTC action will be governed by the stipulated protective order in that case, which dictates the conditions of the disclosure. As entered, that order includes protections for the parties (e.g., CompuCredit) but not for third parties (e.g., the FDIC) with respect to the appropriate use of the documents in the litigation as well as in the administrative actions. More particularly, the protective order specifically states that the production under the order shall not be construed as a concession of admissibility at trial, but is silent as to whether production under the order may be construed as a concession of admissibility in the administrative actions. If the order is to be extended to govern the FDIC's production, therefore, it stands to reason that the same agreement should be apply with respect to the third party production as to the parties' production.

Contrary to your assertion, moreover, the FDIC protective does not address the production in the FTC litigation, and Karla made no such statement in her letter. The FDIC protective order governs the production in the administrative actions only. Hence the issue.

More to the point, *what possible legitimate objection does CompuCredit have to this term*? It seems that you have been round and round on this issue, but CompuCredit has never specified any rationale for rejecting the FDIC's reasoned proposal. The agreement certainly does not impose any incremental burden on CompuCredit or constrain its ability to litigate its action in good faith. It is appears, therefore, that CompuCredit's objection is an effort to create a discovery dispute where none should lie. Please clarify this fundamental issue by stating the basis for CompuCredit's objection.

As to the production format, your proposal looks like it will work, but I will check with our the technical personnel regarding the file format and get back to you shortly.

Finally, please let me know when we can expect to receive the response to our letter (and the FTC notice correspondence), which you previously indicated would be forthcoming.

Thanks.

*Best regards,*

*Erik Haas*
*Patterson Belknap Webb & Tyler LLP*
*1133 Avenue of the Americas*
*New York, NY 10036*
*Tel:  (212) 336-2117*
*Fax: (212) 336-2386*
*email:  ehaas@pbwt.com*

---

**From:** Rebecca Anzidei [mailto:ranzidei@kirkland.com]
**Sent:** Wednesday, August 13, 2008 1:43 PM
**To:** Haas, Erik (x2117)
**Cc:** pcipollone@kirkland.com; ddonovan@kirkland.com; Michael Williams
**Subject:** Letter

Erik,
    Your email was just forwarded to me by a colleague as you had an error in my email address. Additionally, I was unaware that Karla was out of the office today.

    With respect to the FDIC's proposed language, it appears that the FDIC's concern is aimed at the admissibility in the FDIC matters of certain documents produced in the FTC case. This appears to be an issue for ALJ Miserendino who is handling the FDIC matters. This does not relate to the FTC case. Therefore, we do not think

any amendment to the FTC protective order is necessary or proper.  Moreover, as Karla stated in her letter, this issue is already covered in the FDIC protective order, so there should be no impediment to the FDIC producing documents.

As to the format for the production, we propose that documents be produced as Tiffs with Concordance delimiters and an Opticon load file, to the extent possible.  Let me know if that's acceptable to you.

Thanks,

Rebecca

**Rebecca Ruby Anzidei, Esq. | KIRKLAND & ELLIS LLP**
655 FIFTEENTH STREET, N.W.  |  WASHINGTON, D.C. 20005
Direct (202) 879-5046 | FAX (202) 879-5200 | ranzidei@kirkland.com
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*


----------------------------------------------
Privileged/Confidential Information may be contained in this message.
 If you are not
the addressee indicated in this message (or responsible for delivery
of the message to
such person), you may not copy or deliver this message to anyone.  In
such case, you
should destroy this message and kindly notify the sender by reply
email.  Please advise
immediately if you or your employer do not consent to Internet email
for messages of this
kind.


----------------------------------------------

IRS Circular 230 disclosure:  Any tax advice contained in this
communication (including
any attachments or enclosures) was not intended or written to be
used, and cannot be
used, for the purpose of (i) avoiding penalties under the Internal
Revenue Code or (ii)
promoting, marketing or recommending to another party any transaction
or matter addressed
in this communication.  (The foregoing disclaimer has been affixed

pursuant to U.S.
Treasury regulations governing tax practitioners.)

=====================================================================

************************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
************************************************************

**Vickers, A. Leah (x2766)**

| | |
|---|---|
| **From:** | Daniel Donovan [ddonovan@kirkland.com] |
| **Sent:** | Wednesday, August 20, 2008 6:39 PM |
| **To:** | Sanchez, Karla G. (x2785) |
| **Cc:** | Haas, Erik (x2117); MWilliams@kirkland.com |
| **Subject:** | Re: Protective Order |

Karla,

First, as we discussed, we don't believe your proposal to add six additional words to Paragraph 13 of the protective order changes our understanding of that provision. In addition, we do not believe the FDIC had any grounds to withhold responsive documents to date -- especially in light of our prior conversations with Ms. Sagatelian and Ms. Walters and their representations to us in letters that FDIC documents would be forthcoming.  In the spirit of cooperation and to move past this issue, we are willing to add the language "or hearing in the Related Litigation" to the end of the first sentence of Paragraph 13 of the Protective Order in the FTC action.  With that issue behind us, we look forward to the beginning of the FDIC's production by this Friday.

Second, we will check whether we have the documents below and let you know.

Third, I will be in our New York office tomorrow and willing to sit down over coffee to discuss these issues further if you think it would help.  Just let me know.

Regards,
Dan


"Sanchez, Karla G. (x2785)" <kgsanchez@pbwt.com>          To ddonovan@kirkland.com

08/20/2008 05:36 PM          cc "Haas, Erik (x2117)" <ehaas@pbwt.com>

Subject Protective Order


Dan:  We can agree to produce documents if the protective order in the FTC action is amended to include the following clause:  "Nothing contained herein shall be construed to affect in any way the admissibility of any document, testimony, or other evidence at trial or hearing in the RELATED LITIGATION. "

As to the complaints received from CB&T, they are bates stamped FDICPROD1-00001 through 09596, let me know if you already have these.  Thanks.

# Karla G. Sanchez, Esq.

**Patterson Belknap Webb & Tyler LLP**
|1133 Avenue of the Americas| New York, New York 10036|
|*T* (212) 336-2785|*F* (212) 336-2788|
|kgsanchez@pbwt.com|www.pbwt.com

---

```
------------------------------------------------
Privileged/Confidential Information may be contained in this message.
 If you are not
the addressee indicated in this message (or responsible for delivery
of the message to
such person), you may not copy or deliver this message to anyone.  In
such case, you
should destroy this message and kindly notify the sender by reply
email.  Please advise
immediately if you or your employer do not consent to Internet email
for messages of this
kind.


------------------------------------------------


IRS Circular 230 disclosure:  Any tax advice contained in this
communication (including
any attachments or enclosures) was not intended or written to be
used, and cannot be
used, for the purpose of (i) avoiding penalties under the Internal
Revenue Code or (ii)
promoting, marketing or recommending to another party any transaction
or matter addressed
in this communication.  (The foregoing disclaimer has been affixed
pursuant to U.S.
Treasury regulations governing tax practitioners.)


====================================================================


*********************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
*********************************************************
```

8/25/2008

## IN THE UNTIED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | |
| Plaintiff, | |
| v. | CIVIL ACTION<br>NO. 1:08-CV-1976 |
| COMPUCREDIT CORPORATION<br>and<br>JEFFERSON CAPITAL SYSTEMS,<br>LLC, | U.S. District Court, Northern District of Georgia |
| Defendants. | |

## THE FEDERAL DEPOSIT INSURANCE CORPORATION'S OBJECTIONS AND RESPONSES TO COMPUCREDIT CORPORATION'S JULY 3, 2008 SUBPOENA

The Federal Deposit Insurance Corporation (the "FDIC"), through its undersigned attorneys, Patterson Belknap Webb & Tyler LLP, for their objections and responses to the July 3, 2008 document subpoena ("Subpoena"), of CompuCredit Corporation ("CompuCredit"), in the above-captioned case, state as follows:

### GENERAL OBJECTIONS

1.      The FDIC repeats and hereby incorporates by reference the objections recited in its correspondence from Marguerite Sagatelian to Michael F. Williams, dated July 17, 2008.

2.      The FDIC objects to the Subpoena to the extent that the Subpoena, including any implied or express instructions or directions in the Subpoena, imposes or seeks to impose burdens greater than those imposed by the Federal Rules of Civil Procedure or the Local Rules.

3.      The FDIC objects to the Subpoena to the extent that documents are available from other individuals or entities or are publicly available.  The Subpoena not only seeks FDIC materials that are privileged and confidential, irrelevant, and outside the scope of the lawsuit, it

1

requests information that is publicly available and/or readily available from other sources, including the FDIC and/or FTC websites, as well as other public sources.

4.    The FDIC objects to the Subpoena to the extent that it seeks documents that are not in the custody or control of the FDIC and/or should be requested from other government agencies or other entities.

5.    The FDIC objects to the Subpoena in that the requests are overly broad in time and scope, unduly burdensome, not relevant and/or not reasonably calculated to lead to the discovery of admissible evidence.  The Subpoena does not merely request documents relating to matters that concern the underlying lawsuit, but seeks a wide range of documents relating generally to the supervisory and regulatory activities of FDIC over a seven-and-a-half year period.

6.    The FDIC objects to the Subpoena to the extent that it requests reports of examination and related supervisory records, commercial financial information, inter- and intra-agency memoranda, personnel files, law enforcement records, and other confidential records, which are the property of the FDIC and are exempt from disclosure under FDIC's Rules and Regulations.  See 12 C.F.R. § 309.5.  Many of the documents and information sought, including information sought from the FDIC's SOURCE computer system, concern exempt information under 12 C.F.R. § 309.5.  See also 5 U.S.C. § 552 et seq.  While the FDIC has discretion to release exempt records relating to such matters, it will do so only where such information is relevant to the litigation, upon a demonstration of good cause justifying disclosure, and where a protective order has been entered that adequately protects the interests of the FDIC, the depository institution and third parties.  See 12 C.F.R. § 309.6(b)(8)(i).  Even if the FDIC determines that such documents may be disclosed, such disclosure is subject to all claims of

privilege described in paragraph 11 below.

7.    The FDIC objects to the Subpoena on the grounds that it is overly broad and unduly burdensome in light of CompuCredit's motion to dismiss the FTC action. Although Rule 26(b) of the Federal Rules of Civil Procedure governs the above referenced matter, the FDIC's Rules of Practice and Procedure, 12 C.F.R. Part 308, govern the parallel administrative proceedings between the FDIC and CompuCredit. Part 308 limits the scope of discovery available to CompuCredit in the administrative proceedings. If CompuCredit's motion to dismiss is granted, the FDIC will have unnecessarily committed resources and personnel to producing documents that are outside the scope of discovery under 12 C.F.R. § 308.24. Therefore, the Subpoena is overly broad and burdensome.

8.    The FDIC objects to the Subpoena on the grounds that it is overly broad and unduly burdensome with respect to the request seeking communications including "any oral and written utterance . . . and understandings between two or more persons." To comply with this demand, the FDIC would be required to divert significant resources and personnel from their supervisory and regulatory responsibilities to: (a) search for all persons who may have referenced, in any conversation held over the past seven-and-a-half years, any communication from consumers or other individuals relating to any credit card issued by FBD, FBT or CBT that was marketed by CompuCredit and (b) document those conversations. This request will produce inherently unreliable evidence that is potentially incomplete; in addition, the breadth and scope of the request is the epitome of unduly burdensome.

9.    The FDIC objects to the Subpoena on the grounds that it is overly broad and unduly burdensome to the extent it requests documents and information that "concerns," "refers," or "relates" to a particular topic on the grounds that gathering all documents containing

3

any reference or relationship to a particular topic is unduly burdensome and out of proportion to the documents' potential relevance.

10.     The FDIC objects to Instruction (d) as overly burdensome in so far as it would impose an undue cost on the FDIC. The FDIC also objects to the request for the production of any metadata associated with the produced Electronically Stored Information on the grounds that CompuCredit has not shown that the information is relevant to the subject matter in the litigation. In addition, to respond to the request would be unduly burdensome and the metadata contains privileged information of the type discussed in paragraph 11. The parties should meet and confer and agree on the appropriate format for electronic discovery

11.     The FDIC objects to the Subpoena to the extent that it seeks disclosure of information protected under any applicable privilege or immunity. The Subpoena demands a wide range of documents that encompasses records exempt from disclosure by law. Insofar as the requested records may include documents and materials prepared in relation to the FDIC's supervisory and examination responsibilities, they are of the type and nature which are protected against disclosure by privileges and doctrines recognized and enforced by federal courts. The privileges/doctrines that apply to FDIC records requested include, but are not limited to, the bank examination privilege, the government deliberative process privilege, the law enforcement/investigatory privilege, the inter- and intra- agency privileges, the settlement privilege, the common interest doctrine, the work product doctrine, and the attorney-client privilege. Such privileged information is protected from disclosure under Fed. R. Civ. P. 26(b)(3). In addition, disclosure of any such documents may violate protected privacy interests of individuals. See Privacy Act of 1974, 5 U.S.C. § 552A. In the case of the inadvertent disclosure of privileged or otherwise protected information, the information shall not be

4

considered a waiver of any privilege or other protection. FDIC reserves the right to assert all applicable privileges and objections and to seek the return of any privileged or protected documents or information inadvertently produced.

12.    The FDIC objects to the response date in the Subpoena of July 28, 2008. Given the vast volume of documents sought (including Electronically Stored Information), the many sources of potentially responsive documents, and the extent of privilege review that will be required, the response date of July 28, 2008 was unreasonable.

13.    The FDIC objects to the Subpoena to the extent that it calls for the production of documents that the FDIC previously received from CompuCredit.

14.    The FDIC objects to the premise of any requests in the Subpoena that claim that the FTC has purportedly asserted jurisdiction over financial institutions.

15.    The FDIC objects to the Subpoena to the extent that it requests formal reports of potential testifying experts that may be shared by the FTC and FDIC. Those reports are subject to the Court-ordered schedule.

16.    The FDIC reserves all objections as to the competence, relevance, materiality, admissibility, or privileged status of any information that is provided in response to the Subpoena.

17.    The FDIC objects to Definitions (a), (c), and (e) through (h) as vague and overbroad to the extent that the Definitions includes "representatives, and each person acting or purporting to act on its behalf."

18.    The FDIC objects to Definition (i) as requesting improper information. The FDIC has no obligation to provide identification information in response to a Subpoena.

19.    The FDIC objects to Instruction (a) as overly broad and not calculated to lead to

the discovery of admissible evidence.  The parties should meet and confer as to the appropriate

time frame for each request.

       20.    The FDIC objects to Instruction (g) as overly burdensome and not required by the

Federal Rules of Civil Procedure.

       21.    The production of any documents in response to the Subpoena does not constitute

a waiver of any of the FDIC's objections.

### SPECIFIC OBJECTIONS AND RESPONSES

      Subject to and without waiving these General Objections, FDIC asserts the following

Specific Objections.

### REQUEST NO. 1:

      All documents referring or relating to CompuCredit.

### RESPONSE TO REQUEST NO. 1:

      The FDIC objects to this request as overbroad and unduly burdensome on the grounds
that production of all documents containing any reference or relationship to CompuCredit is not
reasonably calculated to lead to discovery of admissible evidence and is unduly burdensome in
time and scope.  The FDIC further objects to this request to the extent it seeks documents that are
subject to the deliberative process, law enforcement/investigatory, inter- and intra-agency
communications, attorney-client, attorney work product, common interest, and/or the bank
examination privileges/doctrines.

### REQUEST NO. 2:

      All documents referencing or relating to the FTC's purported jurisdiction over
CompuCredit or the FDIC's jurisdiction over CompuCredit.

### RESPONSE TO REQUEST NO. 2:

      The FDIC objects to this request on the grounds that it is overbroad, unduly burdensome
and seeks documents that are neither relevant nor reasonably calculated to lead to the discovery
of admissible evidence particularly insofar as it requests documents on purely legal issues. The
FDIC further objects to this request as overly broad and unduly burdensome to the extent that the
information sought is publicly available.  The FDIC objects to this request as vague regarding
"FTC's purported jurisdiction over CompuCredit." The FDIC further objects to this request in
that non-publicly available documents regarding the FTC's jurisdiction over CompuCredit are

6

not in the custody or control of the FDIC and should be requested from the FTC. The FDIC further objects to this request to the extent it seeks documents that are subject to the deliberative process, law enforcement/investigatory, inter- and intra-agency communications, attorney-client, attorney work product, and/or common interest privileges/doctrines.

**REQUEST NO. 3:**

All documents referencing or relating to the FTC's purported jurisdiction over any financial institutions or their service providers.

**RESPONSE TO REQUEST NO. 3:**

The FDIC objects to this request on the grounds that it is overbroad, unduly burdensome and seeks documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence particularly insofar as it requests documents on purely legal issues. The FDIC further objects to this request as overbroad and unduly burdensome to the extent that the information sought is publicly available. The FDIC objects to this request as vague regarding "FTC's purported jurisdiction over any financial institutions or their service providers." The FDIC further objects to this request in that non-publicly available documents regarding the FTC's jurisdiction are not in the custody or control of the FDIC and should be requested from the FTC. The FDIC further objects to this request to the extent it seeks documents that are subject to the deliberative process, law enforcement/investigatory, inter- and intra-agency communications, attorney-client, attorney work product, and/or common interest privileges/doctrines.

**REQUEST NO. 4:**

All documents reflecting communications between FDIC and any other government agency regarding any and all proposed amendments or changes to Regulation Z since 2001.

**RESPONSE TO REQUEST NO. 4:**

The FDIC objects to this request on the grounds that it is overbroad, unduly burdensome and seeks documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence particularly insofar as it requests documents on purely legal issues. The FDIC also objects to this request to the extent that it seeks documents in the custody and control of other government agencies. The FDIC further objects to this request to the extent it seeks documents that are subject to the deliberative process, law enforcement/investigatory, inter- and intra-agency communications, attorney-client, attorney work product, and/or common interest privileges/doctrines.

**REQUEST NO. 5:**

All communications and documents constituting, evidencing, reflecting, responding to or relating to any complaints or other communications received from consumers or other individuals relating to any credit card issued by CB&T, FB&T or FBD for which CompuCredit

provided services.

**RESPONSE TO REQUEST NO. 5:**

The FDIC objects to this request on the grounds that it is overbroad, unduly burdensome and seeks documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence including "all" complaints, without limitation to subject matter. FDIC further objects to this request to the extent it seeks documents over which CB&T, FB&T or FBD have claimed privilege. The FDIC further objects to this request to the extent it seeks documents that are subject to the deliberative process, law enforcement/investigatory, inter- and intra-agency communications, attorney-client, attorney work product, and/or common interest privileges/doctrines.

Subject to and without waiving its General or Specific Objections, the FDIC will produce relevant, non-privileged, non-publicly available documents located as a result of a reasonable search that constitute consumer complaints or communications concerning CompuCredit's credit card products.

**REQUEST NO. 6:**

All documents relating to any examination, visitation or review of CompuCredit during the relevant period, including any reports, summaries, communications or work papers.

**RESPONSE TO REQUEST NO. 6:**

The FDIC objects to this request on the grounds that it is overbroad, unduly burdensome and seeks documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The FDIC further objects to this request to the extent it seeks documents that are subject to the deliberative process, law enforcement/investigatory, inter- and intra-agency communications, attorney-client, attorney work product, common interest, and/or the bank examination privileges/doctrines.

**REQUEST NO. 7:**

All documents relating to any examination, visitation or review of each of CB&T, FB&T or FBD related in any way to CompuCredit during relevant period.

**RESPONSE TO REQUEST NO. 7:**

The FDIC objects to this request on the grounds that it is overbroad, unduly burdensome and seeks documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The FDIC further objects to this request to the extent it seeks documents that are subject to the deliberative process, law enforcement/investigatory, inter- and intra-agency communications, attorney-client, attorney work product, common interest, and/or the bank examination privileges/doctrines.

**REQUEST NO. 8:**

All documents sufficient to identify each examiner who participated in any examination, visitation or review of CompuCredit during the relevant period.

**RESPONSE TO REQUEST NO. 8:**

The FDIC objects to this request on the grounds that it is overbroad, unduly burdensome and seeks documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 9:**

All documents sufficient to identify any examiner who participated in any examination, visitation or review of each of CB&T, FB&T or FBE during the relevant period.

**RESPONSE TO REQUEST NO. 9:**

The FDIC objects to this request on the grounds that it is overbroad, unduly burdensome and seeks documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 10:**

All documents of any examiner who participated in any examination, visitation or review of CompuCredit during the relevant period or of any supervisor of such examiner, relating to the CompuCredit.

**RESPONSE TO REQUEST NO. 10:**

The FDIC objects to this request on the grounds that it is overbroad, unduly burdensome and seeks documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The FDIC further objects to this request to the extent it seeks documents that are subject to the deliberative process, law enforcement/investigatory, inter- and intra-agency communications, attorney-client, attorney work product, common interest, and/or the bank examination privileges/doctrines.

**REQUEST NO. 11:**

All documents of any examiner who participated in any examination, visitation or review of CB&T, FB&T or FBD during the relevant period or of any supervisor of such examiner, relating in any way to CompuCredit.

**RESPONSE TO REQUEST NO. 11:**

The FDIC objects to this request on the grounds that it is overbroad, unduly burdensome and seeks documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The FDIC further objects to this request to the extent it seeks documents that are subject to the deliberative process, law enforcement/investigatory, inter- and intra-agency communications, attorney-client, attorney work product, common interest, and/or the bank examination privileges/doctrines.

**REQUEST NO. 12:**

All documents that were sent or received by any examiner that participated in any examination, visitation or review of CompuCredit during the relevant period or by any supervisor of such examiner, relating in any way to CompuCredit.

**RESPONSE TO REQUEST NO. 12:**

The FDIC objects to this request on the grounds that it is overbroad, unduly burdensome and seeks documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The FDIC further objects to this request to the extent it seeks documents that are subject to the deliberative process, law enforcement/investigatory, inter- and intra-agency communications, attorney-client, attorney work product, common interest, and/or the bank examination privileges/doctrines.

**REQUEST NO. 13:**

All documents that were sent or received by any examiner that participated in any examination, visitation or review of CB&T, FB&T or FBD during the relevant period or by any supervisor of such examiner, relating in any way to CompuCredit.

**RESPONSE TO REQUEST NO. 13:**

The FDIC objects to this request on the grounds that it is overbroad, unduly burdensome and seeks documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The FDIC further objects to this request to the extent it seeks documents that are subject to the deliberative process, law enforcement/investigatory, inter- and intra-agency communications, attorney-client, attorney work product, common interest, and/or the bank examination privileges/doctrines.

**REQUEST NO. 14:**

All documents relating to any surveys, analyses or copy tests performed or commissioned by the FDIC relating to any credit card issued by CB&T, FB&T or FBD for which CompuCredit provided services.

**RESPONSE TO REQUEST NO. 14:**

The FDIC objects to this request as overbroad, unduly burdensome and seeking documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, including by requesting "all" "surveys" and "analyses." The FDIC further objects to this request to the extent it seeks documents that are subject to the deliberative process, law enforcement/investigatory, inter- and intra-agency communications, attorney-client, attorney work product and/or common interest privileges/doctrines.

**REQUEST NO. 15:**

All documents relating to any analyses of credit card solicitations or fulfillment materials of any other person or entity that markets credit cards.

**RESPONSE TO REQUEST NO. 15:**

The FDIC objects to this request as overly broad, unduly burdensome and seeking documents that are neither relevant nor likely to lead to the discovery of admissible evidence particularly insofar as the request is unlimited with respect to scope, entity or timeframe. The FDIC further objects to this request to the extent it seeks documents that are subject to the deliberative process, law enforcement/investigatory, inter- and intra-agency communications, attorney-client, attorney work product, common interest, and/or the bank examination privileges/doctrines.

**REQUEST NO. 16:**

All documents, including policies, procedures, manuals, guidance, instructions or training materials, that FDIC has provided to its personnel, including but not limited to its personnel in the Consumer Response Center, relating to the consideration and response to complaints and other communications received from consumers or other individuals, and any addition or amendment to such documents during the relevant period.

**RESPONSE TO REQUEST NO. 16:**

The FDIC objects to this request as overbroad, unduly burdensome and seeking documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The FDIC further objects to this request to the extent that the information sought is publicly available on the FDIC's web site. The FDIC also objects to this request to the extent it seeks non-publicly available documents that are subject to the deliberative process, law enforcement/investigatory, inter- and intra-agency communications, attorney-client, attorney work product, common interest, and/or the bank examination privileges/doctrines. Subject to and without waiving these objections or its General Objections, the FDIC will produce the Division of Supervision and Consumer Protection Complaint and Inquiry Manual.

**REQUEST NO. 17:**

All documents, including policies, procedures, manuals, guidance, instructions, statements, or training materials that FDIC has created internally or received from outside source or other government agency to provide instruction to its examiners and compliance specialists relating to Section 5 of the Federal Trade Commission Act, and any addition or amendment to such documents during the relevant period.

**RESPONSE TO REQUEST NO. 17:**

The FDIC objects to this request as overbroad, unduly burdensome and seeking documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The FDIC objects to this request to the extent that the information sought is publicly available on the FDIC's web site. The FDIC further objects to this request to the extent it seeks documents that are subject to the deliberative process, law enforcement/ investigatory, inter- and intra-agency communications, attorney-client, attorney work product, common interest, and/or the bank examination privileges/doctrines.

**REQUEST NO. 18:**

All documents, including policies, procedures, manuals, guidance, instructions, statements or training materials that FDIC has created internally or received from an outside source or other government agency relating to implementation of Financial Institution Letters 57-2002 (May 30, 2002) and 26-2004 (March 11, 2004), and any addition or amendment to such documents during the relevant period.

**RESPONSE TO REQUEST NO. 18:**

The FDIC objects to this request as overbroad, unduly burdensome and seeking documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The FDIC also objects to this request to the extent that the information sought is publicly available on the FDIC's web site. The FDIC further objects to this request to the extent it seeks documents that are subject to the deliberative process, law enforcement/ investigatory, inter- and intra-agency communications, attorney-client, attorney work product, common interest, and/or the bank examination privileges/doctrines.

**REQUEST NO. 19:**

All documents constituting, evidencing, reflecting or relating to any FDIC regulations, policies, guidelines, press releases or public statements concerning enforcement of the Truth in Lending ("TILA") or Section 5 of the FTC Act with respect to credit card solicitations, credit card practices or activities or the disclosure of credit card terms and conditions.

**RESPONSE TO REQUEST NO. 19:**

The FDIC objects to this request as overbroad, unduly burdensome and seeking documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The FDIC also objects to this request to the extent that the information sought is publicly available on the FDIC's web site. The FDIC further objects to this request to the extent it seeks documents that are subject to the deliberative process, law enforcement/investigatory, inter- and intra-agency communications, attorney-client, attorney work product, common interest, and/or the bank examination privileges/doctrines.

**REQUEST NO. 20:**

All documents sufficient to identify all banks, bank service providers or other entities that have been accused, cited or sanctioned by the FDIC for any violations of Section 5 of the Federal Trade Commission Act.

**RESPONSE TO REQUEST NO. 20:**

The FDIC objects to this request as overbroad, unduly burdensome and seeking documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The FDIC also objects to this request to the extent that information about formal enforcement actions is publicly available on the FDIC's web site. The FDIC further objects to this request to the extent it seeks documents that are subject to the deliberative process, law enforcement/investigatory, inter- and intra-agency communications, attorney-client, attorney work product, common interest, and/or the bank examination privileges/doctrines.

**REQUEST NO. 21:**

All documents referencing or relating to the FDIC's documents retention policies or the FDIC's efforts to retain documents in connection with CompuCredit, CB&T, FB&T or FBD.

**RESPONSE TO REQUEST NO. 21:**

The FDIC objects to this request on the grounds that it is seeks documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The FDIC objects to this request to the extent it seeks documents that are subject to the deliberative process, law enforcement/investigatory, inter- and intra-agency communications, attorney-client, attorney work product, and/or common interest privileges/doctrines. FDIC states that the disposition of FDIC records is governed by the Federal Records Act, National Archives and Records Administration General Records Schedules, FDIC-specific retention schedules and the FDIC's Rules of Practice, which are publicly available.

**REQUEST NO. 22:**

All documents referencing or relating to meetings held from and after January 1, 2005 with any official or staff member of any federal bank regulatory agency (including without

limitation the FDIC, the OCC, the OTS and the Federal Reserve) relating to credit card solicitations, credit card practices or activities, or the disclosure of credit card terms and conditions.

**RESPONSE TO REQUEST NO. 22:**

The FDIC objects to this request as overbroad, unduly burdensome and seeking documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, particularly insofar as it is not limited with respect to scope or entity. The FDIC further objects to this request to the extent it seeks documents that are subject to the deliberative process, law enforcement/investigatory, inter- and intra-agency communications, attorney-client, attorney work product, common interest, and/or the bank examination privileges/doctrines.

**REQUEST NO. 23:**

All documents that reflect or relate to any meeting or communication by any FDIC employee, agent or official with any public official or government agency relating to CB&T, FB&T, FBD or CompuCredit.

**RESPONSE TO REQUEST NO. 23:**

The FDIC objects to this request as overbroad, unduly burdensome and seeking documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, particularly insofar as it is not limited with respect to scope or time frame. The FDIC further objects to this request to the extent it seeks documents that are subject to the deliberative process, law enforcement/investigatory, inter- and intra-agency communications, attorney-client, attorney work product, common interest, and/or the bank examination privileges/doctrines.

Subject to and without waiving its General or Specific Objections, the FDIC will produce relevant, non-privileged, non-publicly available documents located as a result of a reasonable search that constitute consumer complaints or communications concerning CompuCredit's credit card products.

**REQUEST NO. 24:**

All documents that reflect or relate to any meeting or communication by any FDIC employee, agent or official with any public official relating to credit card solicitations, credit card practices or activities, the disclosure or credit card terms and conditions or subprime lending or credit financing.

**RESPONSE TO REQUEST NO. 24:**

The FDIC objects to this request as overbroad, unduly burdensome and seeking documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, particularly as it is not limited in terms of scope, entity or time frame. The

14

FDIC further objects to this request to the extent it seeks documents that are subject to the deliberative process, law enforcement/investigatory, inter- and intra-agency communications, attorney-client, attorney work product, common interest, and/or the bank examination privileges/doctrines.   .

**REQUEST NO. 25:**

All documents that reflect or relate to any meeting or communication by any FDIC employee, agent or official with any other government agency relating to credit card solicitations, credit card practices or activities, the disclosure of credit card terms and conditions or subprime or credit financing.

**RESPONSE TO REQUEST NO. 25:**

The FDIC objects to this request as overbroad, unduly burdensome and seeking documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, particularly as it is not limited with respect to scope, entity or time frame. FDIC further objects to this request to the extent it seeks documents that are subject to the deliberative process, law enforcement/investigatory, inter- and intra-agency communications, attorney-client, attorney work product, common interest, and/or the bank examination privileges/doctrines.

**REQUEST NO. 26:**

All documents reflecting communications or meetings between, and documents received from or provided to, any FDIC employee, agent or official and any non-governmental third party, including without limitation any political advocacy organization, consumer advocacy organization, non-profit organization, private commercial entity or individual employed by or acting on behalf of the same, relating in any way to CompuCredit, CB&T, FB&T or FBD.

**RESPONSE TO REQUEST NO. 26:**

The FDIC objects to this request to the extent it seeks documents that are subject to the deliberative process, law enforcement/investigatory, inter- and intra-agency communications, attorney-client, attorney work product, common interest, and/or the bank examination privileges/doctrines. The FDIC objects to this request as overbroad, unduly burdensome and seeking documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST NO. 27:**

All documents relating to CompuCredit in connection with NextBank, National Association, Phoenix, Arizona.

**RESPONSE TO REQUEST NO. 27:**

The FDIC objects to this request as overbroad, unduly burdensome and seeking documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The FDIC further objects to this request to the extent it seeks documents that are subject to the deliberative process, law enforcement/investigatory, inter- and intra-agency communications, attorney-client, attorney work product, common interest, and/or the bank examination privileges/doctrines.

**REQUEST NO. 28:**

All documents reflecting any communication between CB&T and FDIC relating to CompuCredit or the negotiation, terms and issuance of the Order to Cease and Desist and Order to Pay and the Order for Restitution issued to CB&T on June 9, 2008.

**RESPONSE TO REQUEST NO. 28:**

The FDIC objects to this request as overbroad, unduly burdensome and seeking documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The FDIC further objects to this request to the extent it seeks documents that are subject to the deliberative process, law enforcement/investigatory, inter- and intra-agency communications, settlement, attorney-client, attorney work product, common interest, and/or the bank examination privileges/doctrines.

**REQUEST NO. 29:**

All documents that relate to the determination of the amount of the civil money penalty assessed against CB&T in the Order to Cease and Desist and Order to Pay dated June 9, 2008.

**RESPONSE TO REQUEST NO. 29:**

The FDIC objects to this request as overbroad, unduly burdensome and seeking documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The FDIC further objects to this request to the extent it seeks documents that are subject to the deliberative process, law enforcement/investigatory, inter- and intra-agency communications, attorney-client, attorney work product, common interest, and/or the bank examination privileges/doctrines.

**REQUEST NO. 30:**

All documents that relate to the determination of the amount of the restitution assessed against CB&T in the Order for Restitution dated June 9, 2008.

**RESPONSE TO REQUEST NO. 30:**

The FDIC objects to this request as overbroad, unduly burdensome and seeking

documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The FDIC further objects to this request to the extent it seeks documents that are subject to the deliberative process, law enforcement/investigatory, inter- and intra-agency communications, attorney-client, attorney work product, common interest, and/or the bank examination privileges/doctrines.

**REQUEST NO. 31:**

All documents that relate to the determination by the FDIC of the amount of the penalty assessed against CompuCredit in the Notice of Charges dated June 10, 2008 issued by the Federal Deposit Insurance Corporation against CompuCredit Corporation, Case number FDIC-08-139b, FDIC-08-140k, including but not limited to documents discussing the thirteen factors enumerated in the Interagency Policy Regarding the Assessment of Civil Money Penalties, dated June 3, 1998, and Section 14.1-1 of the FDIC Risk Management Manual of Examination Policies or civil money penalty matrix.

**RESPONSE TO REQUEST NO. 31:**

The FDIC objects to this request as overbroad, unduly burdensome and seeking documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The FDIC objects to this request to the extent it seeks documents that are subject to the deliberative process, law enforcement/investigatory, inter- and intra-agency communications, attorney-client, attorney work product, common interest, and/or the bank examination privileges/doctrines.

**REQUEST NO. 32:**

All documents relating to the FDIC's Examination Manual for Credit Card Activities and "Third Party Relationships."

**RESPONSE TO REQUEST NO. 32:**

The FDIC objects to this request as overbroad, unduly burdensome and seeking documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. The FDIC further objects to this request as burdensome in that the documents are publicly available. The FDIC also objects to this request to the extent it seeks documents that are subject to the deliberative process, inter- and intra-agency communications, attorney-client, attorney work product, common interest, and/or the bank examination privileges/doctrines.

**REQUEST NO. 33:**

All documents, witness statements, affidavits, recordings or similar documents relating to or memorializing statements of individuals with credit cards issued by CB&T, FB&T or FBD or provided by such individuals.

**RESPONSE TO REQUEST NO. 33:**

The FDIC objects to this request as overbroad, unduly burdensome and seeking documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  The FDIC further objects to this request to the extent it seeks documents that are subject to the deliberative process,  law enforcement/investigatory, inter- and intra-agency communications, attorney-client, attorney work product, common interest, and/or the bank examination privileges/doctrines.

Subject to and without waiving its General or Specific Objections, the FDIC will produce relevant non-privileged, non-publicly available documents located as a result of a reasonable search that constitute consumer complaints or communications concerning CompuCredit's credit card products.

Dated: August 11, 2008

Gregory L. Diskant
Erik Haas
Karla G. Sanchez
PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036
Tel:  (212) 336-2000
Fax:  (212) 336-2222
*Attorneys for the Federal Deposit Insurance Corporation*

**Vickers, A. Leah (x2766)**

| | |
|---|---|
| **From:** | Haas, Erik (x2117) |
| **Sent:** | Wednesday, August 13, 2008 9:49 AM |
| **To:** | 'Rebecca Anzidei ' |
| **Cc:** | 'Daniel T. Donovan (ddonovan@kirkland.com)'; 'Michael F. Williams (mwilliams@kirkland.com)'; Sanchez, Karla G. (x2785) |
| **Subject:** | Re: Letter |
| **File:** | -1 |

Rebecca,

As previously advised, Karla is out of the office, so she forwarded to me and requested that I respond to your email from 10:40 last night.

You request "proposed language in order to expedite an agreement on the language and the production of documents" and that the FDIC "agree to produce documents if that language is agreed to." Both issues were addressed in the correspondence Karla forwarded yesterday. First, as stated, the FDIC is willing to agree to a reasonable term that reflects the intent that "the parties' agreement that documents produced in the FTC case may be used in other actions shall not be construed to affect the admissibility of evidence in the pending administrative matters involving CompuCredit." To be more granular, paragraph 7 of the Stipulated Protective Order Regarding Confidential Treatment of Documents entered in the FTC action (the "Protective Order") states that materials disclosed in that action shall not be used for any purpose "except for purposes in connection with litigation or RELATED LITIGATION," which is defined as the three administrative actions involving CompuCredit. In paragraph 13, moreover, CompuCredit agreed with the FTC that "Nothing contained herein shall be construed to affect in any way the admissibility of any document, testimony, or other evidence *at trial*." (emphasis added). We propose that the parties' stipulate to addendum that states "No provision of this Protective Order or disclosure made in this litigation shall be construed as a concession of admissibility, or in any way to affect the determination of admissibility or propriety of use of any document, testimony or other evidence in any submissions or at any conferences or hearings in the RELATED LITIGATION." Second, as also stated, the FDIC is prepared to begin production of documents if the parties can reach an accord as to this provision and format of production.

You also represent in your email that you are not available at 4 or 5, the times we proposed for the meet-and-confer. Similarly, we are not available between 12 and 2, the times you propose. In an effort to accommodate your schedules, therefore, we will make ourselves available *any time* tomorrow or Friday for the meet-and-confer (although we would prefer not to schedule it for 10:40 in the evening).

As Karla is out of the office, please copy me on (a) your response to our letter that you indicated would be forthcoming, including the notice of the subpoenas provided to the FTC, (b) any revisions to the proposed stipulation set forth above, and (c) your availability in the next two days, so we can adjust our schedules accordingly.

Thanks.

*Best regards,*

*Erik Haas*
*Patterson Belknap Webb & Tyler LLP*
*1133 Avenue of the Americas*
*New York, NY 10036*
*Tel: (212) 336-2117*
*Fax: (212) 336-2386*
*email: ehaas@pbwt.com*

**From:** Rebecca Anzidei [mailto:ranzidei@kirkland.com]
**Sent:** Tuesday, August 12, 2008 10:40 PM
**To:** Sanchez, Karla G. (x2785)
**Cc:** Dan Donovan; Michael Williams

**Subject:** Re: Letter

Karla,

We do not understand why the FDIC won't provide its proposed language in order to expedite an agreement on the language and the production of documents, or agree to produce documents if that language is agreed to.

We cannot meet at 5. We are available between 12-2. Please let us know what time is workable for you.

Thanks,

Rebecca
Rebecca Ruby Anzidei
Kirkland & Ellis LLP
655 15th Street, NW
Washington, DC 20005
(202) 879-5046
(202) 879-5200 fax

----- Original Message -----
**From:** "Sanchez, Karla G. (x2785)" [KGSANCHEZ@PBWT.COM]
**Sent:** 08/12/2008 08:50 PM AST
**To:** Rebecca Anzidei
**Cc:** Daniel Donovan; Michael Williams; "Haas, Erik (x2117)" <ehaas@pbwt.com>
**Subject:** RE: Letter

Rebecca: We can discuss the exact language on our call tomorrow, but as I stated in my letter, we propose adding language to the protective order to ensure that the parties are not consenting to the admissibility of evidence at the administrative hearing. Once we stipulate to an amendment (and everyone signs), and of course agree to the format of production, we can begin to produce the documents. We cannot meet at 12:30. How about 5?

*Karla*

**From:** Rebecca Anzidei [mailto:ranzidei@kirkland.com]
**Sent:** Tuesday, August 12, 2008 6:18 PM
**To:** Sanchez, Karla G. (x2785)
**Cc:** Daniel Donovan; Michael Williams
**Subject:** Re: Letter

Karla,
We just received your letter and will need more time to review it. However, we have 2 questions that we would appreciate prompt responses to.

1) What specific language is the FDIC requesting be added to the Protective Order?

2) If CCRT agrees to the FDIC's proposed language, will the FDIC produce documents to CCRT tomorrow, and if so, what categories of documents will be produced?

In our letter we proposed 12:30 for the meet and confer. Does this work for you, because 4pm does not work for us.

Thanks,

Rebecca

**Rebecca Ruby Anzidei, Esq. | KIRKLAND & ELLIS LLP**
655 FIFTEENTH STREET, N.W. | WASHINGTON, D.C. 20005
Direct (202) 879-5046 | FAX (202) 879-5200 | ranzidei@kirkland.com

************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,
including all attachments.
************************************************

-----------------------------------------------
Privileged/Confidential Information may be contained in this message.  If you
are not
the addressee indicated in this message (or responsible for delivery of the
message to
such person), you may not copy or deliver this message to anyone.  In such case,
you
should destroy this message and kindly notify the sender by reply email.  Please
advise
immediately if you or your employer do not consent to Internet email for
messages of this
kind.


-----------------------------------------------


IRS Circular 230 disclosure:  Any tax advice contained in this communication
(including
any attachments or enclosures) was not intended or written to be used, and
cannot be
used, for the purpose of (i) avoiding penalties under the Internal Revenue Code
or (ii)
promoting, marketing or recommending to another party any transaction or matter
addressed
in this communication.  (The foregoing disclaimer has been affixed pursuant to
U.S.
Treasury regulations governing tax practitioners.)


=====================================================================

************************************************
The information contained in this communication is
confidential, may be attorney-client privileged, may
constitute inside information, and is intended only for
the use of the addressee. It is the property of
Kirkland & Ellis LLP or Kirkland & Ellis International LLP.
Unauthorized use, disclosure or copying of this
communication or any part thereof is strictly prohibited
and may be unlawful. If you have received this
communication in error, please notify us immediately by
return e-mail or by e-mail to postmaster@kirkland.com, and
destroy this communication and all copies thereof,

3

including all attachments.
*********************************************************

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

```
-----------------------------------------------------------X
FEDERAL TRADE COMMISSION,              :
                                       :
             Plaintiff,                :
                                       :    Civil Action
         v.                            :    No. 1.08-CV-01976-BBM-RGV
                                       :
COMPUCREDIT CORP., et al.,             :    STIPULATION FOR
                                       :    MODIFICATION OF
             Defendants.               :    PROTECTIVE ORDER
                                       :
                                       :
-----------------------------------------------------------X
```

WHEREAS, Defendants CompuCredit Corporation and Jefferson Capital Systems, LLC ("Defendants") have served a third party subpoena (the "Subpoena") seeking documents from the Federal Deposit Insurance Corporation ("FDIC"); and

WHEREAS, the parties and the FDIC wish to extend the protections and terms of the Stipulated Protective Order Regarding Confidential Treatment Of Documents entered in this case on July 30, 2008 (the "Protective Order") to encompass documents produced by the FDIC pursuant to the Subpoena,

NOW, THERFORE, Plaintiff Federal Trade Commission ("FTC") and Defendants hereby stipulate to and request that the Court enter an Order requiring that:

The Protective Order shall be modified such that paragraph thirteen now reads, "Nothing contained herein shall be construed to affect in any way the admissibility of any document, testimony or other evidence at trial or hearing or in the RELATED LITIGATION. This Order has no effect upon, and its scope shall not extend to, any party's use of its own discovery MATERIALS."

**IT IS SO ORDERED THIS _____ DAY OF _____ , 2008.**

_____
THE HONORABLE BEVERLY B. MARTIN
United States District Judge

STIPULATED AND AGREED TO BY:


_____

MARK L. GLASSMAN
GREGORY A. ASHE
KATHERINE M. WORTHMAN
DAVID WIESE
LEAH FRAZIER
Federal Trade Commission
600 Pennsylvania Ave NW
Mail Stop NJ-3158
Washington, DC 20580
Telephone: 202-326-2826
Facsimile: 202-326-3768

Chris M. Couillou (Bar No. 190062)
Federal Trade Commission
Southeast Region
225 Peachtree St NE, Ste 1500
Atlanta, GA 30303
Telephone: 404-656-1353
Facsimile: 404-656-1379

*Attorneys for the Federal Trade Commission*

1972372v.2

PAT CIPOLLONE
DANIEL T. DONOVAN
REBECCA RUBY ANZIDEI
MICHAEL F. WILLIAMS
Kirkland & Ellis
665 Fifteenth Street, NW, Suite 1200
Washington, DC 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

JEFFREY O. BRAMLETT
  (Georgia Bar No. 078780)
MICHAEL B. TERRY
  (Georgia Bar No. 702582)
BONDURANT, MIXSON & ELMORE, LLP
1201 West Peachtree St. NW
Suite 3900
Atlanta, GA 30309
Telephone: (404) 881-4100
Facsimile: (404) 881-4111

MICHAEL J. BOWERS
  (Georgia Bar No. 071650)
Email: mbowers@balch.com
T. JOSHUA R. ARCHER
  (Georgia Bar No. 021208)
Email: jarcher@balch.com
BALCH & BINGHAM LLP
30 Ivan Allen Jr. Blvd. NW, Suite 700
Atlanta, GA 30308
Telephone: (404) 261-6020
Facsimile: (404) 261-3656

*Attorneys for Defendants*

MARGUERITE SAGATELIAN
Counsel
Federal Deposit Insurance Corporation
15 Braintree Hill Office Park
Baintree, MA 02184
msagatelian@fdic.gov
Telephone: (781) 794-5620

HEATHER WALTERS
Counsel
Federal Deposit Insurance Corporation
550 17th St., NW, MB-3122
Washington, DC 20429
hewalters@fdic.gov
Telephone: (202) 898-6729

*Attorneys for the Federal Deposit Insurance Corporation*