# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| _____ ) | |
| **COMPUCREDIT CORP., et al.**, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 1:08-MC-0526-ESH-JMF |
| **FEDERAL DEPOSIT INSURANCE** ) | |
| **CORPORATION**, ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

### FEDERAL TRADE COMMISSION'S OPPOSITION TO PETITIONER COMPUCREDIT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY THE FDIC

Comes now the Federal Trade Commission ("FTC"), by its undersigned attorneys, and hereby opposes CompuCredit's motion to compel production of documents by the Federal Deposit Insurance Corporation ("FDIC"). The FTC is plaintiff in the underlying federal law enforcement action against CompuCredit, pursuant to which CompuCredit issued its document subpoena to third-party FDIC. The FTC agrees with the well-reasoned opposition filed by the FDIC that CompuCredit's premature, unsupported, and unwarranted motion to compel should be denied. The FTC files its separate opposition to inform this Court of the nature of the FTC's lawsuit against CompuCredit and the legal standards by which liability is established. This background can assist this Court in determining, if necessary, issues, such as relevancy.

The FTC also notes that CompuCredit, through its document subpoena to the FDIC and the instant motion to compel, is using inappropriately this federal court proceeding to advance its discovery in other proceedings. The FTC brought its action against CompuCredit in the United States District Court for the Northern District of Georgia (Civil Action No. 1:08-CV-1976-

1

BBM-RGV) to remedy CompuCredit's deceptive marketing of credit cards. The FTC's action against CompuCredit, however, is but one of several lawsuits to which CompuCredit is a party. CompuCredit is respondent in an administrative proceeding brought by the FDIC (*In the Matter of CompuCredit*, Docket No. FDIC-08-139b), plaintiff in a federal court action against the FDIC (*CompuCredit Corp. v. FDIC*, Civil Action No. 1:08-CV-00430-GMS (D. Del.)), defendant in a federal court action by one of its partner banks (*Columbus Bank & Trust v. CompuCredit*, Civil Action No. 4:08-cv-00078-CDL (M.D. Ga.), and plaintiff in a state court action against the same bank (*CompuCredit Corp. v. Columbus Bank & Trust*, Civil Action No. 08-EV-004730-F (Ga. State Ct.).

Notwithstanding the plethora of actions in which CompuCredit is engaged in discovery, CompuCredit may only invoke this Court's authority to compel discovery in *FTC v. CompuCredit*. As is discussed below, many of the documents sought by CompuCredit's FDIC subpoena are not relevant to, or reasonably calculated to lead to the discovery of admissible evidence on, the FTC's complaint. Thus, CompuCredit's true purpose in issuing its subpoena to the FDIC is to use inappropriately discovery tools available in this proceeding against the FDIC in other proceedings.

Finally, the FTC notes that it has filed a motion in the Northern District of Georgia for protective order under Rule 26(c) to prevent CompuCredit from taking the 30(b)(6) deposition of the FDIC and the depositions of several FDIC employees. Magistrate Judge Vineyard has scheduled a hearing on that motion for September 8, 2008. The very issues of relevance, privilege, and inappropriate use of discovery at issue here are also at issue in that motion, and will be ruled upon by Judge Vineyard. Although the FTC is not seeking to either transfer this motion to the Northern District of Georgia or stay this motion, the FTC does respectfully

2

recommend that the Court defer issuing a ruling on this motion until after Judge Vineyard has ruled. The FTC will inform this Court as soon as Judge Vineyard's ruling is issued.

## I.    INTRODUCTION

The FTC filed its action against CompuCredit in the United States District Court for the Northern District of Georgia alleging violations of Section 5 of the FTC Act, 15 U.S.C. § 45, in connection with the marketing of credit cards to consumers with sub-prime credit rating. The FTC alleges that CompuCredit (1) misrepresented the amount of available credit consumers would receive on credit cards; (2) failed to disclose or disclose adequately that it would impose substantial up-front fees on certain credit card accounts; (3) failed to disclose or disclose adequately that it employed a behavioral scoring model that would reduce consumers' credit lines if consumers used their cards for certain types of transactions, including transactions expressly mentioned in the marketing materials; and (4) misrepresented the terms under which it would issue credit cards to consumers with charged-off debt.

On July 21, 2008, CompuCredit filed a motion to dismiss for lack of subject matter jurisdiction. The FTC has filed its opposition, and CompuCredit has until September 5 to file a reply brief. On July 3, 2008, CompuCredit issued the subpoena *duces tecum* to the FDIC at issue here. On July 18, 2008, CompuCredit issued subpoenas for testimony to the FDIC (pursuant to Rule 30(b)(6)) and to three FDIC employees. The topics identified for deposition in the Rule 30(b)(6) notice seek the same type of information as the documents requested in the FDIC document subpoena.[1] On August 15, 2008, the FTC filed a motion for protective order,

_____

[1] For example, Topic 1 seeks information on all aspects of the FDIC's regulation of CompuCredit, including without limitation: (i) the scope, nature, and details of any examinations or visitations of CompuCredit, including the identity of all FDIC personnel

(continued...)

pursuant to Rule 26(c), in the Northern District of Georgia to prevent the depositions from taking

place.  The FTC advanced in that motion the same arguments it advances below:  (1) that the

information sought by CompuCredit is (1) not relevant to nor reasonably calculated to lead to the

discovery of admissible evidence in the FTC action; (2) privileged; and (3) intended mainly for

use in a different proceeding.  CompuCredit filed its opposition brief on August 27, 2008.

Magistrate Judge Vineyard (the magistrate assigned to the FTC action) has scheduled a hearing

on the motion for Monday, September 8, 2008, at 11:00 a.m.

## II.    COMPUCREDIT'S SUBPOENA SEEKS DOCUMENTS THAT ARE NEITHER RELEVANT NOR REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE *IN THE FTC'S CASE*

"[D]iscovery, like all matters of procedure, has ultimate and necessary boundaries."

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1977).  Federal Rule of Civil Procedure

---

[1]  (...continued)
involved in such examinations or visitations; (ii) the findings and conclusions of all such examinations or visitations, including any tentative findings or conclusions, drafts, or versions of such findings and conclusions; (iii) the documents, records, and correspondence relating to all such examinations or visitations, including all work papers created by the FDIC's personnel; and (iv) the scope, nature, and details of any requests for documents or information from CompuCredit, including the identity of all FDIC personnel involved in such examinations or visitations.  Topic 2 seeks information on all aspects of the FDIC's processing of consumer complaints, including without limitation: (i) the documents, records, and correspondence relating to the FDIC's Consumer Response Center, including training and policy materials provided to personnel at the FDIC's Consumer Response Center; (ii) the scope, nature, and details of consumer complaints received by the FDIC about CompuCredit, including the identity of all personnel involved in reviewing or addressing the complaints; (iii) the findings and conclusions relating to all such complaints, including any tentative findings or conclusions, drafts, or versions of such findings and conclusions; and (iv) the documents, records, and correspondence relating to all such complaints.  Topic 6 seeks information on all aspects of the FDIC's regulation under the Bank Services Company Act, including, without limitation: (i) policies and guidelines concerning regulation under the Bank Services Company Act; (ii) documents, records, and correspondence concerning the extent to which such policies and guidelines were adhered; and (iii) identity of individuals with knowledge of such policies and guidelines as well as the extent to which they were adhered.

26(b)(1) limits discovery to "any nonprivileged matter that *is relevant to any party's claim or defense*" and notes that "relevant information" need not be admissible if it is reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1) (emphasis added). When "relevancy is not apparent, [however,] it is the burden of the party seeking discovery to show the relevancy of the discovery request." *Pulsecard, Inc. v. Discover Card Services, Inc.*, 168 F.R.D. 295, 309 (D. Kan. 1996) (citations omitted). To determine relevance, "the court must examine the issues raised in the case." *Id.*

As discussed above, the FTC has charged CompuCredit, in connection with marketing subprime credit cards, with misrepresenting available credit and failing to disclose adequately material information, including fees. These misrepresentations and material omissions occurred primarily through solicitation letters CompuCredit sent to consumers nationwide. Thus, at issue in establishing whether CompuCredit violated Section 5 of the FTC Act is whether those solicitation letters, in fact, made the claims and failed to disclose adequately the material information alleged by the FTC.

In the Eleventh Circuit, where the FTC's case against CompuCredit is pending, to establish liability under Section 5 of the FTC Act, the FTC must establish that (1) there was a representation; (2) the representation was likely to mislead customers acting reasonably under the circumstances, and (3) the representation was material. *FTC v. Tashman*, 318 F.3d 1273, 1277 (11th Cir. 2003). The meaning of an advertisement, the claims or net impressions communicated to reasonable consumers, is fundamentally a question of fact. *FTC v. Nat'l Urological Group, Inc.*, 2008 U.S. Dist. LEXIS 44145, *40 (N.D. Ga. Jun. 4, 2008). When assessing the meaning and representations conveyed by an advertisement, the court must look to the advertisement's overall, net impression rather than the literal truth or falsity of the words in

the advertisement. *Id.* Further, "the court is well-equipped to discern express claims or clear and conspicuous implied claims from the face of the advertisement." *Id.* at *42 n.12.

The only defense CompuCredit has asserted to date is that the Court in the Northern District of Georgia lacks subject matter jurisdiction. Accordingly, at this time, Rule 26(b)(1) only authorizes CompuCredit to seek discovery regarding matters relevant to the FTC's Complaint and that lone legal, but not factual, defense.[2] *See United States ex rel. Purcell v. MWI Corp.*, 238 F.R.D. 321, 324 (D.D.C. 2006) ("The court has the authority to 'confine discovery to the claims and defenses asserted in the pleadings'"). Nevertheless, CompuCredit has attempted to divert this action, which is intended to provide redress to consumers harmed by its deceptive credit card marketing, into an investigation of "what the FDIC knew and when it knew it."[3] The public interest is not served by such a diversion.

As the FDIC ably demonstrates in its opposition (*See* FDIC Mem. Opp'n Mot. Compel at 8), CompuCredit utterly fails to specify which specific documents it believes the FDIC has failed to turn over, instead making a blanket request for all documents CompuCredit sought in the first instance (including documents the FDIC has already produced). *See James N. Pappas & Sons v. McDonald's Corp.*, 1976 U.S. Dist. LEXIS 15490, at *2 (D.D.C. Apr. 20, 1976) ("the movant

---

[2] It is questionable, however, whether CompuCredit is even entitled to discovery on this defense. CompuCredit has already filed a motion to dismiss for lack of subject matter jurisdiction. If it prevails, no discovery will be necessary on this, or any other, issue. If it loses, subject matter jurisdiction will have been established as a matter of law, and discovery will not be necessary on this issue. In either scenario, no discovery will be necessary on this defense. As stated above, with the exception of CompuCredit's reply due September 5, briefing on the motion to dismiss is complete. Thus, discovery on this issue should no longer be necessary, obviating the need for documents in response to Specifications 2 and 3.

[3] The FDIC is not a party to this action, and CompuCredit has failed to demonstrate why (i) the FDIC is a necessary party, (ii) the FDIC is indispensable, and (iii) the Court could not grant full and complete relief in this case without it.

should identify the interrogatory for which it desires a more complete answer and should include a short statement justifying the need for said interrogatory in the light of the respondent's objection thereto"); *Moore's Federal Practice 3d*, § 37.05[5] (3d. ed. 2008) ("A motion to compel discovery or disclosure should both identify specifically the portions of the responses that are inadequate, and explain, at least briefly, what is missing or what kind of information would be necessary to make the responses adequate").

Apparently, CompuCredit's sole basis for production of every document is that the FDIC's Consumer Response Center reviewed consumer complaints regarding the credit cards marketed by CompuCredit and that the FDIC conducted examinations of CompuCredit. (Def. Mem. Supp. Mot. Compel at 4-5.) Presumably, CompuCredit intends to argue that its reliance on statements that may have been made by FDIC staff regarding CompuCredit's marketing materials shields it from liability. Whether CompuCredit acted in good faith without an intent to deceive or whether CompuCredit relied on statements made by others to believe it was not violating the law are immaterial in determining liability under Section 5. Courts have long established that the FTC need not prove that a defendant acted with an intent to defraud or deceive, or in bad faith to establish liability under Section 5 of the FTC Act. *See, e.g., FTC v. Cyberspace.com, LLC*, 453 F.3d 1196, 1202 (9th Cir. 2006); *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1029 (7th Cir. 1988); *Removatron Int'l Corp. v. FTC*, 884 F.2d 1489, 1495 (1st Cir. 1989).[4] Similarly, reliance on others, including counsel, is no defense to

---

[4] *But see FTC v. Hang-Ups Art Enterprises, Inc.*, 1995 WL 914179, *3 (C.D. Cal. Sept. 27, 1995) (holding that a defendant's good faith reliance is not relevant to liability but could be relevant to the limited issue of whether there is a cognizable danger of recurrent violation for purposes of remedy). If CompuCredit had relied on some statement, that statement and not internal opinions of agency staff, would be the relevant fact. *See, e.g., United States v. Farley*,

(continued...)

FTC liability.  *FTC v. Amy Travel Service, Inc.*, 875 F.2d 564, 575 (7th Cir. 1989); *FTC v. Sharp*, 782 F. Supp. 1445, 1451 (D. Nev. 1991); *FTC v. Fax Corp. of America, Inc.*, 1990 U.S. Dist. LEXIS 19967, *6 (D.N.J. Oct. 15, 1990).

Neither can CompuCredit argue that statements made by the FDIC are dispositive as to whether CompuCredit did or did not violate the law.  *See Levine v. World Fin. Network Nat'l Bank*, 2004 U.S. Dist. LEXIS 22864, at *11 (N.D. Ga. Nov. 8, 2004), *rev'd on other grounds*, 437 F.3d 1118 (11th Cir. 2006) (holding that even reasoned staff opinion letters sent directly to the defendant "are not binding nor due administrative deference ").  Nor can CompuCredit argue that FDIC statements have any estoppel effect.  *See Savoury v. United States Attorney General*, 449 F.3d 1307, 1318 (11th Cir. 2006) ("it is far from clear that the doctrine of equitable estoppel may even be applied against a government agency"); *United States v. Ivey*, 1994 U.S. Dist. LEXIS 6064, at *5 (N.D. Ga. Apr. 15, 1994) ("equitable estoppel does not apply against the government where it acts in a sovereign capacity, or in actions to recover public funds") (citing *United States v. Walcott*, 972 F.2d 323, 325, 327 (11th Cir. 1992)); *FTC v. American Microtel, Inc.*, 1992 U.S. Dist. LEXIS 11046, *3 (D. Nev. Jun. 10, 1992) (striking affirmative defense of estoppel); *United States v. Reader's Digest Ass'n*, 464 F. Supp. 1037, 1043 (D. Del. 1978) (same).

CompuCredit may also argue that statements made by the FDIC or others suggest that CompuCredit's marketing materials complied with Truth in Lending Act ("TILA"), 15 U.S.C.

---

[4] (...continued)
11 F.3d 1385, 1390 (7th Cir. 1993) (holding that "[t]he suppositions of FTC staff members expressed in internal memoranda as to requirements of the [relevant law] are not pertinent"); *International Paper Co. v. Federal Power Comm'n*, 438 F.2d 1349, 1358 (2d Cir.), *cert. denied*, 404 U.S. 827 (1971) ("views of individual members of the [agency's] staff are not legally germane").

§ 1601 *et seq.* Even if CompuCredit's materials met TILA's minimum disclosure requirements, that does not shield CompuCredit from liability under Section 5 of the FTC Act. To argue that compliance with TILA constitutes a complete defense to violations of the FTC Act, CompuCredit would have to argue that the federal regulatory scheme established by TILA for credit transactions prevents the FTC from exercising its own regulatory powers to protect consumers from false and deceptive practices in the sale of credit. The United States Supreme Court, however, has held that where federal regulatory schemes overlap and where Congress has not explicitly given one scheme primacy over the other, it is a fundamental principle of statutory construction that both statutes are to be given full effect, if at all possible. *Morton v. Mancari*, 417 U.S. 548, 551 (1974). There is no suggestion in the language of TILA that it ousts the FTC's authority to enforce Section 5 of the FTC Act. *Cf. Thompson Medical Co., Inc. v. FTC*, 791 F.2d 189, 192-93 (D.C. Cir. 1986).

Based upon the above standards for determining whether CompuCredit violated Section 5 as alleged in the FTC's Complaint, the documents sought by CompuCredit are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Thus, documents relating to the FDIC's administrative proceedings against CompuCredit, its partner banks, or any other entity (*e.g.*, Specifications 14, 20, 28, 29, 30, 31, 33); how the FDIC examines or regulates CompuCredit or any other entity (*e.g.*, Specifications 6, 7, 8, 9, 10, 11, 12, 13, 15, 23, 26, 27); the FDIC's enforcement or regulatory policy in general (*e.g.*, Specifications 4, 16, 17, 18, 19, 20, 22, 23, 24, 25, 26, 32); or TILA or its implementing regulations (*e.g.*, Specifications 4, 19, 22, 24, 25) have no bearing on the issue of the FTC's case, namely whether CompuCredit's marketing of subprime credit cards violated Section 5 of the FTC Act. Accordingly, CompuCredit's motion to compel should be denied.

9

III.    **COMPUCREDIT'S SUBPOENA SEEKS DOCUMENTS THAT ARE INTENDED FOR USE IN A DIFFERENT PROCEEDING**

As discussed above, the documents sought by CompuCredit are not relevant to whether CompuCredit violated the law as charged in the FTC's Complaint. Instead, CompuCredit seeks these documents to use in the FDIC's administrative proceeding against it. This Court should not permit this proceeding to serve as a stalking horse for the FDIC's administrative proceeding[5] and should quash the depositions.

"In deciding whether a request comes within the discovery rules, a court is not required to blind itself to the purpose for which a party seeks information." *Oppenheimer Fund*, 437 U.S. at 352 n.17. Thus, when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied. *Id.*; *Shepherd v. Wellman*, 313 F.3d 963, 969 (6th Cir. 2002); *In re Biovail Corp. Secs. Litig.*, 247 F.R.D. 72, 75 (S.D.N.Y. 2007). Indeed, the Advisory Committee Notes to the 2000 Amendments to Rule 26(b) state that "[the court] has the authority to confine discovery to the claims and defenses asserted in the pleadings."

Here, even a cursory review of a majority of the Subpoena Specifications demonstrates that CompuCredit is seeking to documents from the FDIC not for information relevant to this case but rather for use in the FDIC's administrative proceeding. Clearly, documents relating to the FDIC's administrative proceedings against CompuCredit, its partner banks, or any other entity (*e.g.*, Specifications 14, 20, 28, 29, 30, 31, 33); how the FDIC examines or regulates CompuCredit or any other entity (*e.g.*, Specifications 6, 7, 8, 9, 10, 11, 12, 13, 15, 23, 26, 27);

---

[5] While the parties have agreed to coordinate the parallel proceedings, this does not involve allowing impermissible discovery.

10

and the FDIC's enforcement or regulatory policy in general (*e.g.*, Specifications 4, 16, 17, 18, 19, 20, 22, 23, 24, 25, 26, 32) reveal that CompuCredit seeks these documents to defend itself in the FDIC administrative proceeding and not for this action.

As the FDIC notes, CompuCredit has already served the FDIC with requests for documents in the FDIC administrative proceeding that mirror the requests served on the FDIC in this case. Under the FDIC's administrative procedure rules, the FDIC has 10 days to file with the ALJ a motion to strike or otherwise limit the requests. The FDIC has filed its motion to strike, which is pending before the ALJ. With this motion, CompuCredit would have this Court enforce discovery requests issued in that separate administrative proceeding. It is entirely inappropriate for CompuCredit to request that this Court enforce a request that is properly before the ALJ. Accordingly, CompuCredit's motion should be denied.

## IV. COMPUCREDIT'S SUBPOENA SEEKS DOCUMENTS THAT ARE PRIVILEGED

The FTC also notes that the FDIC has asserted numerous privileges, including important government privileges – such as the deliberative process and law enforcement privileges – and the work product doctrine. Yet CompuCredit has utterly failed to set forth any reasons why these important privileges should be swept away.

The deliberative process privilege protects "the decision making processes of government agencies." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150 (1975). It "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance 'the quality of agency decisions by protecting open and frank discussion among those who make them within the Government.'" *DOI v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8

(2001) (internal citations omitted).  Purely factual information might not be privileged; but information relating to policy, theory or recommendations is protected as deliberative. *See EPA v. Mink*, 410 U.S. 73, 91 (1973).  Further, courts have held that the privilege applies where disclosure of factual information would reflect what the agency considers relevant in a particular case. *Mead Data Central, Inc. v. Dep't of the Air Force*, 566 F.2d 242, 256-57 (D.C. Cir. 1977); *Mapother v. Department of Justice*, 3 F.3d 1533, 1537-38 (2d Cir. 1992).

Because CompuCredit seeks information protected by the deliberative process privilege, it can only prevail if it makes a showing "of sufficient need for the material in the context of the facts or the nature of the case . . . ." *In re Grand Jury*, 821 F.2d 946, 959 (3d Cir. 1987).  Courts should consider, among other factors, "the relevance of the evidence sought to be protected." *Redland Soccer Club, Inc. v. The United States Army*, 55 F.3d 827, 854 (3d Cir. 1995), *quoting First Eastern Corp. v. Mainwaring*, 21 F.3d 465, 468 (D.C. Cir 1994).  To overcome the privilege, CompuCredit must show a particularized need which outweighs the reasons for preserving the confidentiality of the requested information. *See Farley*, 11 F.3d at 1389-1390.  CompuCredit has made no such showing in its motion.  Indeed, it cannot make such a showing because, as discussed above, the documents sought are irrelevant to the FTC's case against it.

"The law enforcement investigative privilege is 'based primarily on the harm to law enforcement efforts which might arise from public disclosure of . . . investigatory files.'" *United States v. Winner*, 641 F.2d 825, 831 (10th Cir. 1981) (*quoting Black v. Sheraton Corp*., 564 F.2d 531, 541 (D.C. Cir. 1977)).  Its purpose, *inter alia*, "is to prevent disclosure of law enforcement techniques and procedures . . . ." *United States v. Myerson (In re Dep't of Investigation)*, 856 F.2d 481, 484 (2d Cir. 1988).  Moreover, the law enforcement privilege is implicated to the extent CompuCredit seeks documents regarding communications between the FTC and FDIC.

12

*See, e.g., Nishnic v. Dept. of Justice*, 671 F. Supp. 771, 775 (D.D.C.), *aff'd*, 828 F.2d 844 (D.C. Cir. 1987); *SEC v. Rosenfeld*, 1997 U.S. Dist. LEXIS 13996, at *10 (S.D.N.Y. Sep. 16, 1997) ("the law enforcement privilege would also be implicated since the SEC and the Ontario Securities Commission have a common prosecutorial interest") (*citing Nishnic*, 671 F. Supp. at 775).

The law enforcement investigative privilege, like the deliberative process privilege, is qualified and the government's interest in nondisclosure must be weighed against defendants' need for access to the privileged information. *Tuite v. Henry*, 98 F.3d 1411, 1417 (D.C. Cir. 1996). An important factor that courts have considered in deciding whether to compel disclosure includes the importance of the information to the case. Here, CompuCredit has failed to demonstrate its compelling need for the documents. Indeed, disclosure of the requested documents would produce no benefit for CompuCredit in this proceeding. CompuCredit has no legitimate need for the information because it is not relevant to the FTC's Complaint or any valid defenses thereto.

Many of the documents sought by CompuCredit's subpoena would involve recollections and analyses by attorneys of matters involved in this or other investigations of possible law violations. This is core work product. *See Upjohn Co. v. United States*, 449 U.S. 383, 400 (1981) ("Rule 26 accords special protection to work product revealing the attorney's mental processes); *FTC v. U.S. Grant Resources*, 2004 U.S. Dist. LEXIS 11769, at *31 (E.D. La. Jun. 25, 2004) ("opposing counsel may rarely, if ever, use discovery mechanisms to obtain the research, analysis of legal theories, mental impressions, and notes of an attorney"). The "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation" are entitled to special protection . . . ." *Sporck v. Peil*, 759 F.2d

312, 316 (3d Cir. 1985). Under the joint prosecution privilege, the work product privilege extends to cover information shared between the FTC and the FDIC relating to their parallel actions. *See Nishnic*, 671 F. Supp. at 775; *United States v. Medica-Rents Co.*, 2002 U.S. Dist. LEXIS 14249, at *6-*7 (N.D. Tex. Jun. 21, 2002); *United States ex rel. Burroughs v. DeNardi Corp.*, 167 F.R.D. 680, 686 (S.D. Cal. 1996); *SEC v. Rosenfeld*, 1997 U.S. Dist. LEXIS 13996, at *10 (S.D.N.Y. Sep. 16, 1997).

Here, again, CompuCredit has failed to establish the requisite need because the documents would be irrelevant to whether CompuCredit's marketing materials violated Section 5 of the FTC Act, or any valid defense to the FTC's Complaint. According, CompuCredit's motion to compel should be denied.

## V.    CONCLUSION

CompuCredit seeks to compel the FDIC to produce an enormous quantity of documents. As the FDIC has ably argued, CompuCredit's motion is premature and unwarranted. Further, CompuCredit seeks documents from the FDIC that are not relevant, nor reasonably calculated to lead to the discovery of admissible evidence, in determining whether CompuCredit violated the law as charged in the FTC's Complaint. Further, CompuCredit inappropriately seeks to use this Court to enforce discovery requests intended for use in the FDIC's administrative proceeding against CompuCredit. Finally, CompuCredit has failed to demonstrate why the privileges asserted by the FDIC, such as work product, deliberative process, and law enforcement, should be swept aside. Accordingly, for the reasons set forth herein and in the FDIC's separate opposition, the FTC respectfully requests this Court to deny CompuCredit's motion to compel.

Dated: August 28, 2008                    Respectfully submitted,

                                          WILLIAM BLUMENTHAL
                                          General Counsel


                                            /s/Gregory A. Ashe
                                          GREGORY A. ASHE
                                          D.C. Bar No. 451552
                                          Federal Trade Commission
                                          600 Pennsylvania Ave NW, Rm NJ3152
                                          Washington, DC 20580
                                          Telephone: 202-326-3719
                                          Facsimile: 202-326-3768
                                          Email: gashe@ftc.gov

                                          Attorney for the Federal Trade Commission



## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2008, I electronically filed **FEDERAL TRADE COMMISSION'S OPPOSITION TO PETITIONER COMPUCREDIT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY THE FDIC** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:


        Daniel Donovan
        Dorothy Ashley Doherty.


                                            /s/Gregory A. Ashe
                                          Gregory A. Ashe
                                          Attorney for the Federal Trade Commission

15